Exhibit 3

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| TAYLOR INDUSTRIAL CONSTRUCTION, INC., a Florida corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 8:16-cv-2960-T-24MAP |
| v. | ) ) | |
| WESTFIELD INSURANCE COMPANY, an Ohio corporation, | ) ) ) ) | |
| Defendant. | ) ) ) ) | |
| SLONE ASSOCIATES, INC. a Georgia Corporation, | ) ) ) | |
| Counter-Plaintiff, | ) ) ) | |
| v. | ) ) | |
| TAYLOR INDUSTRIAL CONSTRUCTION, INC., a Florida corporation | ) ) ) | |
| Counter-Defendant. | ) ) | |

**DECLARATION OF GREG TAYLOR IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

1

1. I am Greg Taylor, the President of Plaintiff and Counter-Defendant, TAYLOR INDUSTRIAL CONSTRUCTION, INC. ("Taylor"). I am over the age of 18, and make the following statements based on my personal knowledge and information regarding the matters stated herein.

2. Since I was 18 years old, for more than 45 years, I have worked in the construction industry, and as a welder. I have no college education.

3. As President of Taylor, I negotiated the contractual terms under which Taylor provided welding services on the Walmart project at issue in this case (the "Project"). Those terms were negotiated between myself and Bill Daniels. Bill Daniels is the principal for DANIELS WELDING SERVICES, INC. ("Daniels"). Daniels had a written subcontract agreement ("Subcontract Agreement") with the general contractor, SLONE ASSOCIATES, INC. ("Slone") for the Project. Slone had a contract with the owner, WAL-MART STORES, INC. ("Walmart") for the Project.

4. Before finalizing the contract for Taylor to provide welding services to Daniels on the Project, I spoke at length with Bill Daniels about the Project and had a representative from Taylor conduct a site visit.

5. During that time, Taylor was advised that it was being hired to replace a prior welding subcontractor, SUWANNEE IRON WORKS ("Suwannee"), that had been hired by Daniels but that was forced to leave the job site for what I understand to be poor performance.

6. It was further made known to Taylor that time was of the essence in completing the welding work on the Project, that the hours Taylor would be permitted to weld would be after normal business hours (about 5:00 p.m. until about 4:00 a.m.) on Friday, Saturday, and Sunday each week until the welding work was completed.

7. Taylor and Daniels agreed to terms under a time-and-materials basis in a written contract

with a change order.  A true and accurate copy of that contract and change order is attached hereto as **Exhibit 1** ("Contract").   Under the Contract, Taylor would provide welding services on the Project under the direction of Daniels.   In return, Daniels agreed to compensate Taylor at a flat rate of $60/hour for work done by Taylor's employees, and to reimburse Taylor for materials costs plus a percentage mark-up.  Those terms are all included in the Contract.

8.  During the timeframe from June 25, 2016 through July 26, 2016, Taylor performed under its Contract. On June 30, 2016, I notified Slone and Walmart by U.S. Certified Mail that I was providing welding services, specifically reinforcing bar joists, on the Project.

9.  Taylor's supervisor on the Project, Dwayne McHaney, maintained a hand-written log on behalf of Taylor, as was Mr. McHaney's regular practice, to track the time spent by Taylor's employees that worked on the Project.  A true and accurate copy of that log is attached hereto as **Exhibit 2**.

10. Mr. McHaney is an experienced, well-qualified employee of Taylor and over his years of working on welding projects for Taylor I have come to know him as trustworthy, honest, and accurate in completing his job logs.

11. After completing his daily logs from the Project, Mr. McHaney completed formal, typed time sheets to be presented to Daniels for its signature and approval.  All of Taylor's time sheets submitted for this Project were signed and approved by Bill Daniels or his authorized representative as verification of the accuracy of the time recorded and for the labor expended by Taylor.  True and accurate copies of these time sheets are attached hereto as **Exhibit 3**.

12. The signed time sheets attached as Exhibit 3 were then used by staff in Taylor's office to complete invoices that were sent to Daniels.

13. Additionally, materials costs incurred by Taylor on the Project were included for reimbursement plus an additional contractually agreed to percentage mark-up in all invoices. In my 45 years of experience in the construction industry, it is standard practice for a percentage mark-up to be charged for the costs of materials, rentals, and other out-of-pocket costs.

14. Taylor's invoices submitted to Daniels for payment are all attached hereto as **Exhibit 4**. The total sum of those invoices is $175,453.36.

15. Importantly, Taylor's Contract with Daniels included a clause entitling Taylor to written notice of any alleged defects in its work, and an opportunity to cure such defects. That clause reads, in pertinent part:

11.1 FAILURE OF PERFORMANCE   Should Subsubcontactor fail to satisfy contractual deficiencies or to commence and continue satisfactory correction of the default with diligence or promptness within seven (7) business Days from receipt of Subcontractor's written notice, then Subcontractor, without prejudice to any right or remedies, shall have the right to take whatever steps it deems necessary to correct deficiencies and charge the cost thereof to Subsubcontractor, who shall be liable for such payment, including reasonable overhead, profit and attorneys' fees.  In the event of an emergency affecting safety of persons or property, Subcontractor may proceed as above without notice, but Subcontractor shall give Subsubcontractor notice promptly after the fact as a precondition of cost recovery.
. . .
11.3. TERMINATION BY SUBCONTRACTOR  If Subsubcontractor fails to commence and satisfactorily continue correction of a default within seven (7) business Days after written notification issued under section 11.1, then Subcontractor may, in lieu of or in addition to section 11.1, issue a second written notification, to Subsubcontractor. Such notice shall state that if Subsubcontactor fails to commence and continue correction of a default within seven (7) Days of the written notification, the Agreement will be deemed terminated.  A written notice of termination shall be issued by Subcontractor to Subsubcontractor at the time Subsubcontractor is terminated. …

Contract at pp. 4-5.

16. At no time while Taylor worked on the Project, and at no time prior to the date that Taylor recorded its lien, was Taylor ever provided by Daniels, the general contractor, SLONE

ASSOCIATES, INC. ("Slone"), the owner, WAL-MART ("Walmart"), or anyone else, with a written notice of any defects in Taylor's welding work.

17. In late July of 2016 Daniels notified Slone of its intent to discontinue working on the Project. Shortly thereafter Taylor received a similar notice from Daniels. In response to Daniels' notice to Taylor, Taylor responded in writing informing Daniels that it had not received written notice of default under the Contract, that no defects in Taylor's work had been made known to Taylor, and that unless termination was properly made under the express terms of the Contract that Taylor intended to continue to perform. A true and accurate copy of that letter is attached as **Exhibit 5**.

18. Not long after sending the letter attached as Exhibit 5, Taylor contacted Slone and asked to be kept on the Project. Slone informed Taylor that it had already hired another welding company to complete the work. That company is Champco, which is based out of Texas.

19. As a result of Daniels' decision to cease work on the Project, and Slone's notice to Taylor that Champco had been hired to complete the remaining welding work, Taylor left the Project.

20. To the best of Taylor's knowledge, after it left the Project, all of the remaining welding work was completed by Champco.

21. At all pertinent times, including when Taylor was on the job, and thereafter, Taylor remained willing, ready, and able to fix any deficiencies in its work that were made known to Taylor. No such notice was received, however. Nor was Taylor given a chance by Daniels, Slone, or Walmart to remedy any alleged deficiencies in its work.

22. The invoices submitted by Taylor to Daniels remained unpaid. As a result, Taylor contacted an attorney at the Akerman Senterfitt law firm in Jacksonville, advised him of the situation, and provided the attorney with copies of Taylor's invoices and all of the documents

5

requested by the attorney. The attorney drafted a lien and provided the same to Taylor with instructions that it be executed by Greg Taylor and recorded. A true and accurate copy of that lien is attached hereto as **Exhibit 6**.

23. I relied completely on the attorney for Taylor to accurately and properly prepare the lien. In my opinion, and to the best of my knowledge, the attorney is a well-respected member of The Florida Bar with the skill and knowledge necessary to draft a valid and enforceable lien as required by Chapter 713 of the Florida Statutes.

24. To be clear, the lien and the representations in it are not fraudulent, willfully exaggerated, or overstated in any way. The amount shown as unpaid on the lien, $175,453.36, is the total sum of the invoices sent by Taylor to Daniels.

25. It does, however, appear that the attorney made a typographical error when he wrote that Taylor's last day on the Project was August 26, 2016. Taylor's last day on the Project, other than to remove equipment and supplies, was actually July 26, 2016, which is what it appears the attorney intended to type. When I signed the lien on behalf of Taylor, I did not notice that typographical error. The typographical error caused no prejudice to any party, and absolutely did not serve to inflate the value of Taylor's lien.

26. I do not have any legal training or college education, but I did review the lien as best I could before I signed it.

27. I was in the presence of the notary public when I signed the lien.

28. The time-and-materials billing of Taylor on the Project has been mischaracterized. This type of Contract is commonly used in the construction industry. The flat rates for labor and percentage mark-ups for materials costs are all inclusive for Taylor; that is, they include payments to third parties, out-of-pocket costs, payments owed to Taylor's employees, taxes, lodging and meal expenses for out of town work sites, other expenses, and any amounts

remaining are profits to Taylor.  All of this is properly charged pursuant to the terms of the Contract negotiated with Daniels.

29. It is also important to clarify that Taylor did not make any improper charges for its work on the Project.  During its work on the Project, Taylor's welders had to complete their welding on raised lifts that put them close to the rafters in the roof of a warehouse owned by Walmart.

30. In the middle of July in Florida, the heat at the top of the warehouse was intense, especially when Taylor's employees were operating welding torches.  This heat induced extreme fatigue and dehydration.  Working in these unusually hot conditions, and at night when visibility can be poor, can reasonably cause even experienced, well-qualified welders to need to make more than one pass over the joists they are welding before they are satisfactorily completed.  It is also not unusual for the welders to need to take water breaks for safety purposes to avoid injury.

31. This was true throughout the time Taylor's employees worked on the Project.  It was unavoidable given the site conditions.  It is also customary, proper, and fully contemplated under the Contract between Daniels and Taylor that this work and time be fully compensated for.  This was further understood by Bill Daniels, and reaffirmed by him when he or Daniels' representative signed Taylor's time sheets and signified Daniels' agreement that the charges were correct under the Contract.

32. Customary welding practices, under those physically challenging site conditions, necessarily account for the welders to make more than one pass over their work to verify that it is completed to the standards for the Project.

33. An additional complication on this Project was created by the owner, Walmart's requirement that Taylor's welders frequently move from bar joist to bar joist before the welding work on a particular joist was completed.  The warehouse remained under use by Walmart throughout

the construction.  That resulted in Taylor's welders being moved away from bar joists that they were not able to fully complete.  The owner created complications, which were not within Taylor's control, together with Taylor's inability to return to the job to finish its work, made it impossible for Taylor to complete the welding work on all bar joists.

34. Taylor has not been paid one single dollar for its work on the Project, by the owner, Walmart, the general contractor, Slone, or the subcontractor, Daniels.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 25, 2018.

Signed: _Greg Taylor_____
Printed Name: Greg Taylor

8

**Exhibit 1**

# AGREEMENT

Job No:

This Agreement is made this _8th_ day of _July_, _2016_ by and between

**SUBCONTRACTOR:**   Daniels Welding Services, Inc.
449 Bark Rd
Ocilla, GA 31774
Attn: Bill Daniels

**SUBSUBCONTRACTOR:**   Taylor Industrial Construction, Inc
1321 Shady Oak Lane
Jasper, FL 32052
Attn: Greg Taylor

**CONTRACTOR:**   Slone Associates, Inc
835 Gil Harbin Industrial Blvd.
Valdosta, GA 31601
Attn: William Slone

**Registered Agent:** Justin Slone
1004 Egret Way
Lake Park, GA.
31636

**PROJECT:** Walmart Distribution Center joist repair.

**OWNER:** Walmart

**DESIGN PROFESSIONAL:**_____  _____

Notice to the Parties shall be given at the above addresses.

**1. SUBSUBCONTRACT WORK** Subsubcontractor shall perform Subsubcontract Work under the general direction of Subcontractor and shall cooperate with Subcontractor so Subcontractor may fulfill obligations to Contractor. Subsubcontractor to provide:  Labor necessary to reinforce approximately 80 bar joist, as more fully described in Exhibit A.

**2. SUBSUBCONTRACT AMOUNT** Subcontractor agrees to pay Subsubcontractor **$194,400.00** for satisfactory and timely performance and completion of Subsubcontract Work:

**3. INSURANCE** Subsubcontractor shall purchase and maintain insurance that will protect Subsubcontractor from claims arising out of Subsubcontractor operations under this Agreement, whether the operations are by Subsubcontractor, or any of Subsubcontractor's consultants or subcontractors or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable.

Page 1 of 7

**4. EXHIBITS** The following Exhibits are incorporated by reference and made part of this Agreement:

EXHIBIT A: Subsubcontract Scope of Work
EXHIBIT B: Drawings, Specifications, General, Special, Supplementary, and other conditions, and addenda.
EXHIBIT C: Progress Schedule
EXHIBIT D: None
EXHIBIT E: None

**5. SAFETY** To protect persons and property, Subsubcontractor shall establish a safety program implementing safety measures, policies and standards conforming to (a) those required or recommended by governmental and quasi-governmental authorities having jurisdiction and (b) requirements of this Agreement. Subsubcontractor shall keep project site clean and free from debris resulting from Subsubcontract Work.

**6. ASSIGNMENT** Subsubcontractor may assign the whole or any part of Subsubcontract Work or this Agreement without prior written approval of Subcontractor.

**7. TIME**

    **7.1. TIME IS OF THE ESSENCE** Time is of the essence for both parties. The parties agree to perform their respective obligations so that the Project may be completed in accordance with this Agreement. The term Day shall mean calendar day unless otherwise specifically defined.

    **7.2. SUBCONTRACT PROGRESS SCHEDULE**: In consultation with Subsubcontractor, the Subcontractor shall prepare the schedule for performance of Subcontractor's work (Subcontract Progress Schedule) and shall revise and update such schedule, in accordance with Subcontractor's project schedule requirements and as necessary, as Subcontractor's work progresses. Subsubcontractor shall provide Subsubcontract Work scheduling information and shall revise and update as the project progresses. Subsubcontractor shall not be bound by the Subcontract Progress Schedule, but shall make reasonable efforts to comply with its necessary progress requirements. The Subcontract Progress Schedule and all subsequent changes and additional details shall be submitted to Subsubcontractor reasonably in advance of any change of performance.

**8. CHANGE ORDERS** When Subcontractor orders in writing, Subsubcontractor, without nullifying this Agreement, shall make any and all changes in Subsubcontract Work, which are within the general scope of this Agreement. Any adjustment in the Subsubcontract Amount or time of performance shall be authorized by a Change Order. No adjustments shall be made for any changes performed by Subsubcontractor that have not been ordered by Subcontractor. A Change Order is a written instrument prepared by Subcontractor and signed by Subsubcontractor stating their agreement upon the change in Subsubcontract Work. Corresponding emails stating the terms of the change shall be deemed sufficient to constitute a Change Order. If commencement and/or progress of Subsubcontract Work is delayed without the fault or

responsibility of Subsubcontractor, the time for Subsubcontract Work shall be extended by Change Order to the extent obtained by Subcontractor, and the Subsubcontract Progress Schedule shall be revised accordingly.

## 9. PAYMENT

9.1. SCHEDULE OF VALUES: None

9.2. PROGRESS AND FINAL PAYMENTS Progress payments, less retainage, shall be made to Subsubcontractor, for Subsubcontract Work satisfactorily performed, no later than seven (7) Days after receipt by Subcontractor of payment from Contractor for Subsubcontract Work. Final payment of the balance due shall be made to Subsubcontractor no later than seven (7) Days after receipt by Subcontractor of final payment from Contractor for Subsubcontract Work. These payments are not subject to receipt of such lien waivers, affidavits, warranties, guarantees or other documentation required by this Agreement. Subcontractor or Contractor. If payment from Contractor for such Subsubcontract Work is not received by Subcontractor, through no fault of Subsubcontractor, Subcontractor will make payment to Subsubcontractor within 30 days following completion of that portion of the Subsubcontract Work for which the payment application relates, including final payment.

9.3. RETAINAGE: There shall be no retainage

9.4. PAYMENTS WITHHELD Subcontractor may reject a Subsubcontractor payment application or withhold amounts from previously approved Subsubcontractor payment application, in whole or in part, as may reasonably be necessary to protect Subcontractor from loss or damage based upon the following to the extent Subsubcontractor is responsible: (a) failure to timely perform Subsubcontract Work, (b) properly pay subcontractors or suppliers, (c) promptly correct rejected, defective or nonconforming Subsubcontract Work.

9.5. PAYMENT DELAY If Subcontractor has received payment from Contractor and, if for any reason not the fault of Subsubcontractor, Subsubcontractor does not receive a progress payment from Subcontractor within seven (7) Days after the date such payment is due, or if Subcontractor has failed to pay Subsubcontractor within 30 days for Subsubcontract Work performed, Subsubcontractor, upon giving seven (7) Days' written notice to Subcontractor, and without prejudice to and in addition to any other legal remedies, may stop work until payment of the full amount owing to Subsubcontractor has been received. Subsubcontract Amount and time of performance shall be adjusted by the amount of Subsubcontractor's reasonable and verified cost of shutdown, delay and startup, and shall be effected by an appropriate Change Order.

9.6. WAIVER OF CLAIMS Final payment shall constitute a waiver of all claims by Subsubcontractor relating to Subsubcontract Work, but shall in no way relieve Subsubcontractor of liability for warranties, or for nonconforming or defective work discovered after final payment, nor relieve the Subcontractor for claims made in writing

by the Subsubcontractor prior to its application for final payment as unsettled at the time of such payment.

**10. INDEMNITY** To the fullest extent permitted by law, Subsubcontractor shall indemnify and hold harmless Subcontractor, Subcontractor's other subcontractors, Contractor, Design Professional, Owner and their agents, consultants, employees and others as required by this Agreement from all claims for bodily injury and property damage other than the Subsubcontract Work itself that may arise from performance of Subsubcontract Work but only to the extent caused by the negligent acts or omissions of Subsubcontractor, Subsubcontractor's subcontractors or anyone employed directly by any of them or by anyone for whose acts any of them may be liable.

To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Subsubcontractor, Subsubcontractor's other subcontractors, and their agents, consultants, employees and others as required by this Agreement from all claims for bodily injury and property damage including the Subsubcontract Work itself that may arise from performance of Subsubcontract Work but only to the extent caused by the negligent acts or omissions of Subcontractor, Subcontractor's subcontractors or anyone employed directly by any of them or by anyone for whose acts any of them may be liable.

**11. SUBCONTRACTOR'S RIGHT TO PERFORM SUBSUBCONTRACTOR'S RESPONSIBILITIES AND TERMINATION OF AGREEMENT**

**11.1. FAILURE OF PERFORMANCE** Should Subsubcontractor fail to satisfy contractual deficiencies or to commence and continue satisfactory correction of the default with diligence or promptness within seven (7) business Days from receipt of Subcontractor's written notice, then Subcontractor, without prejudice to any right or remedies, shall have the right to take whatever steps it deems necessary to correct deficiencies and charge the cost thereof to Subsubcontractor, who shall be liable for such payment, including reasonable overhead, profit and attorneys' fees. In the event of an emergency affecting safety of persons or property, Subcontractor may proceed as above without notice, but Subcontractor shall give Subsubcontractor notice promptly after the fact as a precondition of cost recovery.

**11.2. TERMINATION BY OWNER** Should Owner terminate the prime agreement or should Contractor terminate the subcontract agreement, or any part which includes Subsubcontractor Work, Subcontractor shall notify Subsubcontractor in writing within three (3) business Days of termination and, upon written notification, this Agreement shall be terminated and Subsubcontractor shall immediately stop Subsubcontract Work, follow all of Subcontractor's instructions, and mitigate all costs. In the event of such termination, Subcontractor liability to Subsubcontractor shall be limited to amounts due for work actually completed by Subsubcontractor, and shall not be contingent upon Subcontractor's recovery from Owner or Contractor. Subcontractor agrees to cooperate with Subsubcontractor, at Subsubcontractor's expense, in the prosecution of any Subsubcontractor claim arising out of Owner or Contractor termination and to permit Subsubcontractor to prosecute the claim, in the name of Subcontractor, for the use and benefit of Subsubcontractor, or assign the claim to Subsubcontractor.

11.3. TERMINATION BY SUBCONTRACTOR If Subsubcontractor fails to commence and satisfactorily continue correction of a default within seven (7) business Days after written notification issued under section 11.1, then Subcontractor may, in lieu of or in addition to section 11.1, issue a second written notification, to Subsubcontractor. Such notice shall state that if Subsubcontractor fails to commence and continue correction of a default within seven (7) Days of the written notification, the Agreement will be deemed terminated. A written notice of termination shall be issued by Subcontractor to Subsubcontractor at the time Subsubcontractor is terminated. Subcontractor may furnish those materials, equipment and/or employ such workers or subcontractors as Subcontractor deems necessary to maintain the orderly progress of Subcontractor's work. All costs incurred by Subcontractor in performing Subsubcontract Work, including reasonable overhead, profit and attorneys' fees, costs and expenses, shall be deducted from any monies due or to become due Subsubcontractor. Subsubcontractor may be liable for payment of any amount by which such expense may exceed the unpaid balance of the Subsubcontract Amount. At Subsubcontractor's request, Subcontractor shall provide a detailed accounting of the costs to finish Subsubcontract Work.

11.4. TERMINATION BY SUBSUBCONTRACTOR If Subsubcontract Work has been stopped for fourteen (14) Days because Subsubcontractor has not received progress payments or has been abandoned or suspended for an unreasonable period of time not due to the fault or neglect of Subsubcontractor, then Subsubcontractor may terminate this Agreement upon giving Subcontractor seven (7) Days' written notice. Upon such termination, Subsubcontractor shall be entitled to recover from Subcontractor payment for all Subsubcontract Work satisfactorily performed but not yet paid for, including reasonable overhead, profit and attorneys' fees, costs and expenses. However, if Contractor has not paid Subcontractor for the satisfactory performance of Subsubcontract Work through no fault or neglect of Subcontractor, and Subsubcontractor terminates this Agreement under this article because it has not received corresponding progress payments, Subsubcontractor shall be entitled to recover from Subcontractor, within a reasonable period of time following termination, payment for all Subsubcontract Work satisfactorily performed but not yet paid for, including reasonable overhead and profit.

## 12. BONDS: None

## 13. CLAIMS AND DISPUTES

13.1. CLAIMS RELATING TO SUBCONTRACTOR Subsubcontractor shall give Subcontractor written notice of all claims within fourteen (14) Days of Subsubcontractor's knowledge of facts giving rise to the event for which claim is made; otherwise, such claims shall be deemed waived. All unresolved claims, disputes and other matters in question between Subcontractor and Subsubcontractor shall be resolved in the manner provided in this Agreement.

13.2. SUBCONTRACTOR CAUSED DELAY Nothing in this Agreement shall preclude Subsubcontractor's recovery of delay damages caused by Subcontractor.

**13.3. WORK CONTINUATION AND PAYMENT** Unless otherwise agreed in writing, Subsubcontractor shall continue Subsubcontract Work and maintain the Progress Schedule during any dispute resolution proceedings. If Subsubcontractor continues to perform, Subcontractor shall continue to make payments in accordance with this Agreement.

**13.4. MULTIPARTY PROCEEDING**: None.

**13.5. NO LIMITATION OF RIGHTS OR REMEDIES** Nothing in this article shall limit any rights or remedies not expressly waiver by Subsubcontractor, which Subsubcontractor may have under lien laws or payment bonds.

**13.6. DIRECT DISCUSSIONS** If a dispute arises out of or relates to this Agreement or its breach, the Parties shall endeavor to settle the dispute. Within seven (7) business days, Parties' representatives, who shall possess the necessary authority to resolve such matter and who shall record the date of first discussions shall conduct direct discussions and make a good faith effort to resolve such dispute.

**13.7. MEDIATION** Disputes between Subcontractor and Subsubcontractor not resolved by direct discussion shall be submitted to mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association. The Parties shall select the mediator within fifteen (15) Days of the request for mediation. Engaging in mediation is a condition precedent to any form of binding dispute resolution. Mediation shall take place in Jasper, Florida.

**13.8. Binding Dispute Resolution** If neither direct discussions nor mediation successfully resolves the dispute, the Parties shall submit the matter to the binding dispute resolution procedure selected below:

[_____] ARBITRATION Unless the Parties mutually agree otherwise in writing, all claims, disputes and matters in question arising out of, or relating to, this Agreement shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the AAA then in effect. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. An award entered in an arbitration proceeding shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

**[X] LITIGATION Litigation in the appropriate state court in and for Jasper, Hamilton County, Florida.**

> 13.8.1. COSTS The costs of any binding dispute resolution procedures and reasonable attorneys' fees shall be borne by the non-prevailing Party, as determined by the adjudicator of the dispute.

13.8.2. VENUE The venue of any binding dispute resolution procedure shall be Jasper, Hamilton County, Florida.

13.8.3. CHOICE OF LAW: To the fullest extent provided by law, the terms of this Agreement shall be governed by the Law of the State of Florida.

13.8.3. Neither Party may commence arbitration if the claim or cause of action would be barred by the applicable statute of limitations had the claim or cause of action been filed in a state or federal court. Receipt of a demand for arbitration by the person or entity administering the arbitration shall constitute the commencement of legal proceedings for the purposes of determining whether a claim or cause of action is barred by the applicable statute of limitations.

13.8.4. An award entered in an arbitration proceeding pursuant to this Agreement shall be final and binding upon the Parties, and judgment may be entered upon an award in any court having jurisdiction.

**14. JOINT DRAFTING** The Parties expressly agree that this Agreement was jointly drafted, and that they both had opportunity to negotiate terms and to obtain assistance of counsel in reviewing terms prior to execution. This Agreement shall be construed neither against nor in favor of either Party, but shall be construed in a neutral manner.

**Daniels Welding Services, Inc.**

By: _William Daniels_

William Daniels, President

**Taylor Industrial Construction**

BY: _Gregory D. Taylor_

Gregory D. Taylor, President

END OF DOCUMENT

Page 7 of 7

# CHANGE ORDER

**Subcontractor:** Daniels Welding Services, Inc

**Subsubcontractor:** Taylor Industrial Construction, Inc

**Contractor:** Slone Associates, Inc

**Owner:** Walmart

**Project:** Walmart Distribution Center joist repair

**Subcontract Change Order No.: 1**

This Subcontract Change Order is made this ___8th___ Day of July, 2016, by Subcontractor and Subsubcontractor, for the following change(s) within the scope of the Subcontract Work:

> All work required under the Subcontract Agreement by and between Taylor Industrial Construction and Daniels Welding Services, Inc, shall be converted to a time and material basis as more particularly described below and on Exhibit "A" attached hereto.

Other than the Subcontract Amount, all other provisions of the Subcontract shall remain in effect. The Subcontractor agrees to pay for all changes in the Subcontract Work performed by the Subsubcontractor under this Subcontract Change Order according to the terms of the Subcontract Agreement. The amount paid by the Subcontractor shall be full compensation for all work requested and for all effects of this change in the Subcontract Work. The change, if any, in the Subcontract Amount shall be computed according to one of the following methods:

> The Subcontract Work shall be completed on a time and material basis. The Subcontract Amount shall be calculated based on the labor and material rate sheet attached hereto as Exhibit "A".

The Subsubcontractor shall include the amount of such change in its next application for payment in a separate line item.

The Subcontract Time, if affected by this Subcontract Change Order, is modified as follows:

Add [ _____ ] Days OR deduct [ _____ ] Days.

1

**Original Subcontract Amount**: $194,400.00

**Change in Subcontract Amount from this Subcontract Change Order**: Subcontract Amount is hereby converted to a time and material basis to be calculated as described on Exhibit "A"

**Revised Subcontract Amount**: Time and Material

**Daniel's Welding Services, Inc.**

By: _William Daniels_

William Daniels, President

Date: _July 8, 2016_

**Taylor Industrial Construction**

By: _Gregory D. Taylor_

Gregory D. Taylor, President

Date:
7-11-16

END OF DOCUMENT.

2



### INDUSTRIAL CONSTRUCTION, INC.

**10344 90th Trail - Live Oak Florida, 32060**
**PHONE (386) 364 -7647  -  FAX  (386) 364-4552**

### Time and Material Rates
### Effective for 2016

### Daniels Welding, Inc.

**Submitted by: Donnie Bryan, Jr. – Project Manager**
**Cell: (386) 855-0720 – Email: donnie@taylorindustrialconstruction.com**

| | |
|---|---|
| Superintendent | $60.00 |
| Certified Welder | $60.00 |
| Journeyman Fitter | $60.00 |

### Notes:

1. At least one (1) foreman or one (1) superintendent will be included on all projects as supervision.
2. Labor rates are conclusive and include all overhead and profit.
3. Consumables are not included and will be invoiced at cost plus 10%.
4. All rates are quoted as straight time, over time applies above 40 hours per week or 10 hours per day, over time charges are the straight time rate multiplied by 1.4.
5. Tooling with a value of less than $500.00 are included in our rates, please see "other charges" for tooling with a value of $500.00.

### Other Charges:

1. Material purchased by Taylor Industrial will be invoiced at our cost plus 10%.
2. Third party equipment rentals which do not require fuel will be invoiced at our cost plus 10%.
3. Third party equipment rentals that do require fuel will be invoiced at our cost plus 15%.
4. Company owned equipment will be invoiced in accordance with industry standard rental rates.
5. Insurance required for third party rentals beyond our normal coverage will be invoiced at our cost.
6. The Authorized Inspector for ASME Code work will be invoiced at our cost plus 10%.

**Exhibit 2**

6-20-16 Thru 6-26-16     Brooksville Wal-mart Dist. Center Job # 16180

| | 20th M | 21st T | 22nd W | 23rd T | 24th F | 25th S | 26th S | Total |
|---|---|---|---|---|---|---|---|---|
| Dwayne McHaney | 7.0 | Ø | 2.0 | 2.0 | 2.0 4.0 | 12.0 | 12.0 | 37.0 |
| Lawrence Hillhouse | | | | | 4.0 | 12.0 | 12.0 | 28.0 |
| Mario Burciaga | | | | | 4.0 | 12.0 | 12.0 | 28.0 |
| Doug Cantrell | | | | | 4.0 | 12.0 | 12.0 | 28.0 |
| Jacob Avery | | | | | 4.0 | 12.0 | 12.0 | 28.0 |
| Branson Starling | | | | | 4.0 | 12.0 | 12.0 | 28.0 |
| Chad Plain | | | | | 4.0 | 12.0 | 12.0 | 28.0 |
| Jason Shelton | | | | | 4.0 | 12.0 | 12.0 | 28.0 |
| Gary Risner | | | | | 4.0 | 12.0 | 12.0 | 28.0 |
| Barrett K. Register | | | | | 4.0 | 12.0 | 12.0 | 28.0 |
| Justin Adkins | | | | | 4.0 | 12.0 | 12.0 | 28.0 |
| Michael Adkins | | | | | 4.0 | 12.0 | 12.0 | 28.0 |
| Josh Meyers | | | | | 4.0 | 12.0 | 12.0 | 28.0 |
| Niel Barlow | | | | | 4.0 | 12.0 | 12.0 | 28.0 |
| Brandon Williams | | | | | 4.0 | 12.0 | 12.0 | 28.0 |
| Brett Tucker | | | | | 4.0 | 12.0 | 12.0 | 28.0 |

6-24-16

Safety Training / Welding Tst.

Job
#16180

6-27-16 Thru 7-3-16    Brooksville Wal-mart Distribution Center

| | | 27th M | 28th T | 29th W | 30th T | 1st F | 2nd S | 3rd S | Total |
|---|---|---|---|---|---|---|---|---|---|
| ✓ | Dwayne McHaney | 12.0 | Ø | 4.0 | Ø | Ø | 12.0 | 12.0 | 36.0 40.0 |
| ✓ | Lawrence Hillhouse | Ø | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 36.0 24.0 |
| Jasper ✓ | Mario Burciaga | 12.0 | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 36.0 |
| ✓ | Dag Cantrell | 12.0 | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 36.0 |
| L.V. shop ✓ | Jacob Avery | 12.0 | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 36.0 |
| L.V. shop ✓ | Branson Starling | 12.0 | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 36.0 |
| ✓ | Chad Plain | 12.0 | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 36.0 |
| mail | Jason Shelton | 12.0 | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 36.0 |
| L.V. shop | Gary Risner | 12.0 | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 36.0 |
| L.V. shop | Barrett K. Register | 12.0 | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 36.0 |
| Snt | Justin Adkins | 12.0 | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 36.0 |
| Sht | Michael Adkins | 12.0 | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 36.0 |
| L.V. shop | Josh Meyers | 12.0 | Ø | Ø | Ø | Ø | Ø | Ø | 12.0 |
| L.V. shop | Niel Barlow | 12.0 | Ø | Ø | Ø | Ø | Ø | Ø | 12.0 |
| L.V. shop | Brandon Williams | 12.0 | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 36.0 |
| nial Box Jasper | Brett Tucker | 12.0 | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 36.0 |

16131 Klausner
Dwayne + Buck  10.0 hrs
6-30-16

× order cut-off
wheels / Grinding Disc
2 Grinders   5-Hardwire
wire wheels

7-4-16 Thru 7-10-16  Brooksville, WAl-mart Dist. ctr. Job # 16180

| Name | 4Th m | 5Th T | 6Th W | 7Th T | 8Th F | 9Th S | 10Th S | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Dwayne McHaney | 12.0 | Ø | 2.0 | 6.0 | Ø | 12.0 | 12.0 | 36.0 (8) | (48.0) | |
| Lawrence Hillhouse | 12.0 | Ø | | | Ø | 12.0 | 12.0 | 36.0 | (40) | |
| Mario Burciaga | 12.0 | Ø | | | Ø | 12.0 | 12.0 | 36.0 | (40) | |
| Doug Cantrell | 12.0 | Ø | | | Ø | Ø | Ø | 12.0 | | |
| Jacob Avery | 12.0 | Ø | | | Ø | 12.0 | 12.0 | 36.0 | (40.0) | |
| Branson Starling | 10.0 | Ø | | Ø | Ø | 12.0 | 12.0 | 34.0 | (38.0) | |
| Chad Plain | 12.0 | | | | Ø | 12.0 | 12.0 | 36.0 | (40.0) | |
| Jason Shelton | 12.0 | | | | Ø | 12.0 | 12.0 | 36.0 | (40) | |
| Gary Risner | 12.0 | | | | Ø | 12.0 | 12.0 | 36.0 | (40) | |
| Barrett k. Register | 12.0 | | | | Ø | 12.0 | 12.0 | 36.0 | (40) | |
| Justin Adkins | 12.0 | | | | Ø | 12.0 | 12.0 | 36.0 | (40) | |
| Michael Adkins | 12.0 | | | | Ø | 12.0 | 12.0 | 36.0 | (40) | |
| Brandon Williams | 12.0 | | | | Ø | 12.0 | 12.0 | 36.0 | (40) | |
| Brett Tucker | 12.0 | | | | Ø | 11.5 | 12.0 | 35.5 | (39.5) | |
| Sven Stephens | Ø | | | | Ø | 12.0 | 12.0 | 24.0 | SAfety 4.0 | |
| Tobe Cain | Ø | | | | Ø | 12.0 | 12.0 | 24.0 | SAfety 4.0 | |
| John Williams | Ø | Ø | | Ø | Ø | 12.0 | 12.0 | 24.0 | SAfety 4.0 | |

7-11-16 Thru 7-17-16   Brooksville, FL Wal-mart Dist Ctr, Job# 16180

| Name | 11th M | 12th T | 13th W | 14th T | 15th F | 16th S | 17th S | Total |
|---|---|---|---|---|---|---|---|---|
| Dwayne McHaney | 12.0 | Ø | Ø | 4.0 | 2.0 | 12.0 | 12.0 | 36 (46) |
| ✓ Lawrence Hillhouse | 12.0 | | | | | 12.0 | 12.0 | 36 (40) |
| ✓ Mario Burciaga | 12.0 | | | | | 12.0 | 12.0 | 36 (40) |
| ✓ Jacob Avery | 12.0 | | | | | 12.0 | 12.0 | 36 (40) |
| ✓ Branson Starling | 12.0 | | | | | Ø | 10.0 | 22 (22) |
| ✓ Chad Plain | 12.0 | | | | | 12.0 | 12.0 | 36 (40) |
| Jason Shelton | 12.0 | | | | | 12.0 | 12.0 | 36 (40) |
| ✓ Gary Risner | 12.0 | | | | | 12.0 | 12.0 | 36 (40) |
| ✓ Barrett K. Register | 12.0 | | | | | 12.0 | 12.0 | 36 (40) |
| ✓ Justin Adkins | 12.0 | | | | | 12.0 | 12.0 | 36 (40) |
| ✓ Michael Adkins | 12.0 | | | | | 12.0 | 12.0 | 36 (40) |
| ✓ Brandon Williams | 12.0 | | | | | 12.0 | 12.0 | 36 (40) |
| Brett Tucker | Ø | | | | | 4.0 | Ø | 4.0 (4.0) |
| ✓ Sven Stephens | 12.0 | | | | | 12.0 | 12.0 | 36 (40) |
| ✻ Tobe Cain | Ø Ø | Ø | Ø | Ø | Ø | Ø | Ø | Ø Terminated 7-11-16 (6:30) |
| ✻ John Williams | Ø | Ø | Ø | Ø | Ø | Ø | Ø | Quit 7-10-16 |
| ✓ Kieth Odem | Ø | Ø | Ø | 4.0 | Ø | 12.0 | 12.0 | 24 (28) |
| ✓ Cillford Dean | Ø | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 24 (24) |
| ✓ Tom Simone | Ø | Ø | Ø | Ø | Ø | 12.0 | 12.0 | 24 (24) |

7-18-16 Thru 7-24-16  Brooksville, Fl. Walmart Dist CTR. Job# 16180

| | 18th M | 19th T | 20th W | 21st T | 22nd F | 23rd S | 24th S | 35.5 |
|---|---|---|---|---|---|---|---|---|
| DeWayne McHaney | 11.5 | 2.0 | 6.0 | 3.0 | Ø | 12.0 | 12.0 | (45.0) |
| 2 Lawrence Hillhouse | 11.5 | | | | Ø | 12.0 | 12.0 | 35.5 (40) |
| 3 Mario Burciaga | 11.5 | | | | Ø | 12.0 | 12.0 | 35.5 (40) |
| 3 Jacob Avery | 11.5 | | | | Ø | 12.0 | 12.0 | 35.5 (40) |
| 3 Branson Starling | 11.5 | | | | Ø | 12.0 | 12.0 | 35.5 (40) |
| 2 Chad Plain | 11.5 | | | | Ø | 12.0 | 12.0 | 35.5 (40) |
| 3 Jason Shelton | 11.5 | | | | Ø | 12.0 | 12.0 | 35.5 (40) |
| # 5 Gary Risner | 11.5 | | | | Ø | 12.0 | 12.0 | 35.5 (40) |
| 2 Barrett R. Register | 11.5 | | | | Ø | 11.0 | 12.0 | 34.5 (40) |
| 2 Justin Adkins | 11.5 | | | | Ø | 12.0 | 12.0 | 35.5 (40) |
| 5 Michael Adkins | 11.5 | | | | Ø | 12.0 | 12.0 | 35.5 (40) |
| Brandon Williams | Ø | | | | Ø | 12.0 | 12.0 | 24. (24) |
| 2 Sven Stephens | 11.5 | | | | Ø | 12.0 | 12.0 | 35.5 (40) |
| 2 Kieth Odom | 11.5 | | | | Ø | 12.0 | 12.0 | 35.5 (40) |
| 3 Clifford Dean | 11.5 | | | | Ø | Ø | Ø | 11.5 |
| Tom Sornone | 11.5 | | | | Ø | Ø | Ø | 11.5 |
| Zach Stephens | Ø | | | 5.5/4.0 | Ø | 12.0 | 12.0 | 24.0 |

$47.89 (12 Justin Adkins)

.0 hrs Safety Training  Zach Stephens
7-21-16

* Dwayne
   Job# 16178 (6.0 Hrs)
   283.11
   G.E.
   Ext 350
   2810 / 2410  Hwy 23 S. Cecil FID.
   490
   117.45
   852.11 recipts
   117.89 Cash

G.E. Jackson-
ville, Job #
7-25-16 Thru 7-31-16   Brooksville, Walmart Dist Ctr Job # 16180. 16178

| | 25th m | 26th T | 27th W | 28th T | 29th F | 30th S | 31st S | Total |
|---|---|---|---|---|---|---|---|---|
| Dwayne McHaney | Ø | Ø | Ø | 4.0 | 9.0 | Ø | Ø | 13.0 |
| Lawrence Hillhouse | 12 | — End of Job — | | | | | | 12.0 hrs |
| Mario Burciaga | 12 | | | | | | | 12.0 hrs |
| Jacob Avery | 12 | | | | | | | 12.0 |
| Branson Starling | 12 | | | | | | | 12.0 |
| Chad Plain | 12 | | | | | | | 12.0 |
| Jason Shelton | 12 | | | | | | | 12.0 |
| Gary Risner | 12 | | | | | | | 12.0 |
| Barrett K. Register | 12 | | | | | | | 12.0 |
| Justin Adkins | 12 | | | | | | | 12.0 |
| Michael Adkins | 12 | | | | | | | 12.0 |
| Brannin Williams | 9 caf | | | | | | | 9.0 |
| Oven Stephens | 12 | | | | | | | 12.0 |
| Kieth Odom | 12 | | | | | | | 12.0 |
| Zach Stephens | 12 | | | | | | | |

CASH
127.00

**Exhibit 3**



# TAYLOR

INDUSTRIAL CONSTRUCTION, INC.

1321 SHADY OAK LN - JASPER - FLORIDA 32052
PHONE: (386) 792-3060 - FAX: (386) 792-3061

6450

| DATE | NAMES | JOB NUMBER Job#16180, Brooksville, FL. Wal-mart Dist CTR. | | | | | EQUIPMENT | QTY | TIME |
|---|---|---|---|---|---|---|---|---|---|
| | | ST | OT | DT | TOTAL | | | | |
| 7-2-16 | | | | | | | Welding Machine | | |
| | | | | | | | Burning Rig | | |
| | | | | | | | Track Torch | | |
| | | | | | | | Fork Lift, 4 hr. min. | | |
| Superintendent | Dwayne McHaney | 12.0 | | | | 12.0 | Cherry Picker - 15 ton, 4 hr. min. | | |
| General Foreman | | | | | | | Crane - 30 ton, 4 hr. min. | | |
| | | | | | | | Boom Truck - 5 ton, 4 hr. min. | | |
| Foreman | Lawrence Hillhouse | 12.0 | | | | 12.0 | Dump Truck | | |
| | | | | | | | Truck | | |
| | Mario Burciaga | 12.0 | | | | 12.0 | Gator/Golf Cart, day min. | | |
| | | | | | | | Trailer, day min. | | |
| | Doug Cantrel | 12.0 | | | | 12.0 | Manlift - 40', day min. | | |
| | | | | | | | Manlift - 60', day min. | | |
| | Jacob Avery | 12.0 | | | | 12.0 | Backhoe, 4 hr. min. | | |
| | | | | | | | 3/4" Impact, day min. | | |
| | Branson Starling | 12.0 | | | | 12.0 | Floor Saw, day min. | | |
| | | | | | | | Air Compressor, day min. | | |
| | Chad Plain | 12.0 | | | | 12.0 | 2" Pump, day min. | | |
| | | | | | | | Beveling Machine | | |
| | Jason Shelton | 12.0 | | | | 12.0 | Pipe Threader, day min. | | |
| | | | | | | | EXPENDABLES | | |
| | Gary Risner | 12.0 | | | | 12.0 | 4-1/2" Grinding Disc | | |
| | | | | | | | 7" Grinding Disc | | |
| | Barrett K. Register | 12.0 | | | | 12.0 | Face Shields | | |
| | | | | | | | Oxygen | | |
| | Justin Adkins | 12.0 | | | | 12.0 | Acetylene | | |
| | | | | | | | Argon | | |
| | Michael Adkins | 12.0 | | | | 12.0 | 75/25 | | |
| | | | | | | | 1/8" 7018 Welding Rods | | |
| | Brandon Williams | 12.0 | | | | 12.0 | 1/8" 6010 Welding Rods | | |
| | | | | | | | RENTAL EQUIPMENT | | |
| | Brett Tucker | 11.0 | | | | 11.0 | | | |
| | | | | | | | | | |
| | | | | | | 167 | | | |
| | | | | | | | MATERIALS | | |
| | | | | | | | | | |

Approved by _Bill Daniels_



**TAYLOR**

INDUSTRIAL CONSTRUCTION, INC.

1321 SHADY OAK LN - JASPER - FLORIDA 32052
PHONE: (386) 792-3060 - FAX: (386) 792-3061

6449

| DATE | JOB NUMBER | | | | EQUIPMENT | QTY | TIME |
|---|---|---|---|---|---|---|---|
| 7-3-16 | Job# 16190, Brooksville, FL Wal-mart Dist CTR, | | | | Welding Machine | | |
| | | | | | Burning Rig | | |
| | | | | | Track Torch | | |
| NAMES | ST | OT | DT | TOTAL | Fork Lift, 4 hr. min. | | |
| Superintendent DwAyne McHaney | 12.0 | | | 12.0 | Cherry Picker - 15 ton, 4 hr. min. | | |
| General Foreman | | | | | Crane - 30 ton, 4 hr. min. | | |
| | | | | | Boom Truck - 5 ton, 4 hr. min. | | |
| Foreman Lawrence Hillhouse | 12.0 | | | 12.0 | Dump Truck | | |
| | | | | | Truck | | |
| Mario Burciaga | 12.0 | | | 12.0 | Gator/Golf Cart, day min. | | |
| | | | | | Trailer, day min. | | |
| Doug Cantrell | 12.0 | | | 12.0 | Manlift - 40', day min. | | |
| | | | | | Manlift - 60', day min. | | |
| Jacob Avery | 12.0 | | | 12.0 | Backhoe, 4 hr. min. | | |
| | | | | | 3/4" Impact, day min. | | |
| Branson Starling | 12.0 | | | 12.0 | Floor Saw, day min. | | |
| | | | | | Air Compressor, day min. | | |
| Chad Plain | 12.0 | | | 12.0 | 2" Pump, day min. | | |
| | | | | | Beveling Machine | | |
| Jason Shelton | 12.0 | | | 12.0 | Pipe Threader, day min. | | |
| | | | | | EXPENDABLES | | |
| Gary Risner | 12.0 | | | 12.0 | 4-1/2" Grinding Disc | | |
| | | | | | 7" Grinding Disc | | |
| Barrett K. Register | 12.0 | | | 12.0 | Face Shields | | |
| | | | | | Oxygen | | |
| Justin Atkins | 12.0 | | | 12.0 | Acetylene | | |
| | | | | | Argon | | |
| Michael Adkins | 12.0 | | | 12.0 | 75/25 | | |
| | | | | | 1/8" 7018 Welding Rods | | |
| Brandon Williams | 12.0 | | | 12.0 | 1/8" 6010 Welding Rods | | |
| | | | | | RENTAL EQUIPMENT | | |
| Brett Tucker | 12.0 | | | 12.0 | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | MATERIALS | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Approved by

6448

TAYLOR
INDUSTRIAL CONSTRUCTION, INC
1321 SHADY OAK LN - JASPER - FLORIDA 32052
PHONE: (386) 792-3060 - FAX: (386) 792-3061

| DATE | JOB NUMBER | | | | EQUIPMENT | QTY | TIME |
|---|---|---|---|---|---|---|---|
| | Job# 16180, Brooksville, FL | | | | Welding Machine | | |
| 7-4-16 | WAl-mart Dist CTR. | | | | Burning Rig | | |
| NAMES | ST | OT | DT | TOTAL | Track Torch | | |
| | | | | | Fork Lift. 4 hr. min. | | |
| Superintendent DWAyne McHaney | 12.0 | | | 12.0 | Cherry Picker - 15 ton, 4 hr. min. | | |
| | | | | | Crane - 30 ton. 4 hr. min. | | |
| General Foreman | | | | 8.0 | Boom Truck - 5 ton, 4 hr. min. | | |
| | | | | | Dump Truck | | |
| Foreman LAwrence Nilhouse | 12.0 | | | 12.0 | Truck | | |
| | | | | | Gator/Golf Cart. day min. | | |
| MArio Burciaga | 12.0 | | | 12.0 | Trailer, day min. | | |
| | | | | | Manlift - 40', day min. | | |
| Doug CAntrell | 12.0 | | | 12.0 | Manlift - 60', day min. | | |
| | | | | | Backhoe. 4 hr. min. | | |
| JAcob Avery | 12.0 | | | 12.0 | 3/4" Impact. day min. | | |
| | | | | | Floor Saw. day min. | | |
| BrAnson StArling | 10.0 | | | 10.0 | Air Compressor. day min. | | |
| | | | | | 2" Pump, day min. | | |
| Chad Plain | 12.0 | | | 12.0 | Beveling Machine | | |
| | | | | | Pipe Threader. day min. | | |
| JAson Shelton | 12.0 | | | 12.0 | EXPENDABLES | | |
| | | | | | 4-1/2" Grinding Disc | | |
| GAry Risner | 12.0 | | | 12.0 | 7" Grinding Disc | | |
| | | | | | Face Shields | | |
| Barrett K. Register | 12.0 | | | 12.0 | Oxygen | | |
| | | | | | Acetylene | | |
| Justin Atkins | 12.0 | | | 12.0 | Argon | | |
| | | | | | 75/25 | | |
| Michael Adkins | 12.0 | | | 12.0 | 1/8" 7018 Welding Rods | | |
| | | | | | 1/8" 6010 Welding Rods | | |
| BrAndon Williams | 12.0 | | | 12.0 | RENTAL EQUIPMENT | | |
| | | | | | | | |
| Brett Tucker | 12.0 | | | 12.0 | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | 108 | | | |
| | | | | | | | |
| | | | | | MATERIALS | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Approved by

# Taylor Industrial Construction Inc

1321 Shady Oak Ln
Jasper, FL 32052
Phone: 386-792-3060 Fax: 386-792-3061

Customer: Rhinds Redding

Job # 16180

Job: 16180 Date: 7-9 thru 7-11-2016   Shift:

| Badge # | Name | Class | In | Out | Hrs Job:16180 7-9-16 PO: | Hrs Job:16180 7-10-16 PO: | Hrs Job:16180 7-11-16 PO: | Hrs Job: PO: | Hrs Job: PO: | Hrs Job: PO: | Hrs Job: PO: | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Dwayne McIlwain | | | | 12.0 | 12.0 | 12.0 | | | | | |
| | Lawrence Hillman | | | | 12.0 | 12.0 | 12.0 | | | | | |
| | Marco Burciaga | | | | 12.0 | 12.0 | 12.0 | | | | | |
| | Jessie Avery | | | | 12.0 | 12.0 | 12.0 | | | | | |
| | Benson Stratton | | | | 12.0 | 12.0 | 12.0 | | | | | |
| | Chris Dean | | | | 12.0 | 12.0 | 12.0 | | | | | |
| | Gary Smalley | | | | 12.0 | 12.0 | 12.0 | | | | | |
| | Barry Pissey | | | | 12.0 | 12.0 | 12.0 | | | | | |
| | Justin Perkins | | | | | | | | | | | 36 |

Equipment   Truck   Hour   Day

Approved By: Charlie Trim  Date: 7-9-16
Approved By: Charlie Trim  Date: 7-10-16
Approved By: Charlie Trim  Date: 7-11-16
Approved By:  Date:
Approved By:  Date:
Approved By:  Date:
Approved By:  Date:

**Taylor Industrial Construction Inc**
1321 Shady Oak Ln
Jasper, FL 32052
Phone: 386-792-3060 Fax: 386-792-3061

Date: 7-9-16 (4/h)
7-11-2016   4:30pm - 4:30am

Shift:

Customer: Jacobs Welfare

| Badge # | Name | Class | In | Out | Job: 189/2 Hrs | PO: | Job: 189/16 Hrs | PO: | Job: 189/9 Hrs | PO: | Hrs | PO: | Hrs | PO: | Hrs | PO: | Total |
|---------|------|-------|----|----|----|----|----|----|----|----|----|----|----|----|----|----|-------|
| | Michael Burke | | | | 12.0 | | 12.0 | | 12.0 | | | | | | | | 96 |
| | Marion Williams | | | | 12.0 | | 12.0 | | 12.0 | | | | | | | | 35.5 |
| | Brett Taylor | | | | 11.5 | | 10.0 | | 0 | | | | | | | | 32 |
| | Wren StrPlans | | | | 12.0 | | 12.0 | | 12.0 | | | | | | | | 34 |
| | John Cain | | | | 12.0 | | 12.0 | | 0 | | | | | | | | 24 |
| | John Williams | | | | | | | | | | | | | | | | 15.4 |

| | | Truck | Hour | | Approved By: | | Approved By: | | Approved By: | | Approved By: | | Approved By: | | Approved By: | |
| | | | Day | | Date: 7-9-16 | | Date: 7-11-16 | | Date: 7-11-16 | | | | | | | |

Equipment

# Taylor Industrial Construction Inc

1321 Shady Oak Ln
Jasper, FL 32052
Phone: 386-792-3060 Fax: 386-792-3061

Customer: Daniels Welding

Job Site: Crawfordville FL

Date: 7-18-16 thru 7-19-16

Shift: 5:00am - 11:30 pm

| Badge # | Name | Class | In | Out | Hrs | Hrs | Hrs | Hrs | Hrs | Hrs | Hrs | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Dwayne McKinney | | | | 11.5 | 22.0 | 11.5 | | | | | 33.5 |
| | James Hillman Sr | | | | 11.5 | 22.0 | 11.5 | | | | | 33.5 |
| | Nico Douglas | | | | 8.0 | 10.0 | 11.5 | | | | | 22.5 |
| | Jacob Fixery | | | | 11.5 | 22.0 | 11.5 | | | | | 33.5 |
| | Eleator Shelley | | | | 11.5 | 22.0 | 11.5 | | | | | 33.5 |
| | Chad Haig | | | | 11.5 | 22.0 | 11.5 | | | | | 33.5 |
| | Nico Shelley | | | | 11.5 | 22.0 | 11.5 | | | | | 33.5 |
| | Gary Kissner | | | | | | | | | | | |
| | Barrett R Baynite | | | | | | | | | | | |
| | Katia Queirès | | | | | | | | | | | |

**Equipment**

| | Truck | | Hour Day |
|---|---|---|---|
| S54 | | | |

Approved By: Chad Haig  Job: 15180  PO: 7-18-16  Date: 7-19-16

Approved By: Charles  Job: 15180  PO: 7-18-16  Date: 7-19-16

Approved By: Charles  Job: 15180  PO: 7-18-16  Date: 7-19-16

Approved By:  Job:  PO:  Date:

Approved By:  Job:  PO:  Date:

Approved By:  Job:  PO:  Date:

Approved By:  Job:  PO:  Date:

**Taylor Industrial Construction Inc**
1321 Shady Oak Ln
Jasper, FL 32052
Phone: 386-792-3060 Fax: 386-792-3061

Customer: Dennis Harmon Dist CIR Reidsville, FL

Job # 16120 Wal-mart Dist CIR Reidsville, FL

Date: 7-16-16 THRU 7-18-16

Shift: 2nd 6:00pm to 6:00am 4:30 hrs

| Badge # | Name | Class | In | Out | Hrs | Hrs | Hrs | Hrs | Hrs | Hrs | Hrs | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Michael Gibbons | | | | 11.5 | 12.0 | 11.5 | | | | | 35 |
| | Brandon Williams | | | | 11.5 | 12.0 | 0 | | | | | 23.5 |
| | Brett Tucker | | | | 4.0 | 0 | 0 | | | | | 4 |
| | Evan Shytlock | | | | 11.5 | 12.0 | 11.5 | | | | | 35 |
| | Billie Cain | | | | 11.5 | 12.0 | 11.5 | | | | | 35 |
| | Ken Scream | | | | 11.5 | 12.0 | 11.5 | | | | | 35 |

| Equipment | | Truck | Hour |
|---|---|---|---|
| | | | Day |

Job: 7-16-16   PO:
Date: 7-19-16   Approved By: [signature]

Job: 7-17-16   PO:
Date: 7-19-16   Approved By: [signature]

Job: 7-18-16   PO:
Date: 7-19-16   Approved By: [signature]

Date:   PO:
Approved By:

Date:   PO:
Approved By:

Date:   PO:
Approved By:

## Taylor Industrial Construction Inc
1321 Shady Oak Ln
Jasper, FL 32052
Phone: 386-792-3060 Fax: 386-792-3061

**Customer: Daniels Welding**

Job # 16180
Brooksville FL Walmart Dist CTR.

Date: 7-23-16 Thru 7-25-16

Shift: 5:00 pm - 5:00 am

| Badge # | Name | Class | Truck | In | Out | Hour Day | Job: 16180 7-23-16 PO: Hrs | Job: 16180 7-24-16 PO: Hrs | Job: 16180 7-25-16 PO: Hrs | Job: PO: Hrs | Job: PO: Hrs | Job: PO: Hrs | Job: PO: Hrs | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Dwayne McNaney | | | | | | 12.0 | 12.0 | 12.0 | | | | | 36.0 |
| | Lawrence H. Maule | | | | | | 12.0 | 12.0 | 12.0 | | | | | 36.0 |
| | Mario Buc. ??? | | | | | | 12.0 | 12.0 | 12.0 | | | | | 36.0 |
| | Jacob Pivey | | | | | | 12.0 | 12.0 | 12.0 | | | | | 36.0 |
| | Brandon Shelley | | | | | | 12.0 | 12.0 | 12.0 | | | | | 36.0 |
| | Carl Plain | | | | | | 12.0 | 12.0 | 12.0 | | | | | 36.0 |
| | Jason Shelton | | | | | | 12.0 | 12.0 | 12.0 | | | | | 36.0 |
| | Gary Risner | | | | | | 11.0 | 12.0 | 12.0 | | | | | 35.0 |
| | Garrett K. Register | | | | | | 12.0 | 12.0 | 12.0 | | | | | 36.0 |
| | Justin Perkins | | | | | | 12.0 | | | | | | | 12.0 |

**Equipment**

W-525

Approved By: (signed)  Date: 7-23-16
Approved By: (signed)  Date: 7-24-16
Approved By:  Date:

85 hrs reg
88 1/2 reg 10 hrs reg

**Taylor Industrial Construction Inc**
1321 Shady Oak Ln
Jasper, FL 32052
Phone: 386-792-3060 Fax: 386-792-3061

Customer: Daniels Welding

Job # 16180

Brooksville FL Walmart Dist Ctr

| Badge # | Name | Class | In | Out | Hour Day | | | |
|---------|------|-------|-----|-----|----------|---|---|---|

Date:
7-23-16 Thru 7-26-16

Shift: 5:00pm - 5:00am

| Name | Job: 16180 7-23-16 PO: Hrs | Job: 16180 7-24-16 PO: Hrs | Job: 16180 7-25-16 PO: Hrs | Hrs | Hrs | Hrs | Hrs | Total |
|------|------|------|------|-----|-----|-----|-----|-------|
| Michael Perkins | 12.0 | 12.0 | 12.0 | | | | | 36 |
| Brandon Williams | 12.0 | 12.0 | 12.0 | | | | | 36 |
| Sean Stephens | 12.0 | 12.0 | 12.0 | | | | | 36 |
| Kieth Odom | 12.0 | 12.0 | 12.0 | | | | | 36 |
| Zach Stephens | 12.0 | 12.0 | 12.0 | | | | | 36 |

Equipment    Truck

Approved By: Charles ___   Date: 7-23-16
Approved By: Charles ___   Date: 7-24-16
Approved By:    Date:
Approved By:    Date:
Approved By:    Date:
Approved By:    Date:
Approved By:    Date:

**Exhibit 4**

# Invoice

Taylor Industrial Construction, Inc.

1321 Shady Oak Ln
Jasper, FL 32052

| Date | Invoice # |
|------|-----------|
| 7/6/2016 | 2016-076 |

**Bill To**

Daniles Welding Service, Inc.
449 Bark RD
Ocilla, GA 31774

**Ship To**

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
|  | Due Upon Invoice | 16180 | 7/6/2016 |  |  |  |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | CONTRACT | Reinforce Bar Joist at the Walmart Distribution Center Brooksville, FL |  |  |
| 576 | CONTRACT | 6/25/16 - 6/27/16 | 60.00 | 34,560.00 |
| 503 | CONTRACT | 7/2/16 -7/4/16 | 60.00 | 30,180.00 |
| 1 | CONTRACT | This invoice is for labor only |  |  |

An additional 1.5% will be added if this invoice is not paid with in 30 days from the date of invoice

| **Total** | **$64,740.00** |
|-----------|----------------|

Taylor Industrial Construction, Inc.

1321 Shady Oak Ln
Jasper, FL 32052

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/26/2016 | 2016-092 |

| Bill To |
|---------|
| Daniles Welding Service, Inc.<br>449 Bark RD<br>Ocilla, GA 31774 |

| Ship To |
|---------|
|  |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
|  | Due Upon Invoice | 16180 | 7/26/2016 |  |  |  |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | CONTRACT | Reinforce Bar Joist at the Walmart Distribution Center in Brooksville, FL |  |  |
| 539.5 | Hours | 7/9/16 - 7/11/16 | 60.00 | 32,370.00 |
| 539 | Hours | 7/16/16 - 7/18/16 | 60.00 | 32,340.00 |
| 1 | CONTRACT | This invoice is for labor only. |  |  |

An additional 1.5% will be added if this invoice is not paid with in 30 days from the date of invoice

| **Total** | $64,710.00 |
|-----------|------------|

# Invoice

Taylor Industrial Construction, Inc.

1321 Shady Oak Ln
Jasper, FL 32052

| Date | Invoice # |
|------|-----------|
| 8/11/2016 | 2016-094 |

| Bill To | Ship To |
|---------|---------|
| Daniles Welding Service, Inc.<br>449 Bark RD<br>Ocilla, GA 31774 | |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| | Due Upon Invoice | 16180 | 8/11/2016 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | CONTRACT | Reinforce Bar Joist at the Walmart Distribution Center in Brookesville, FL | | 31,500.00 |
| 525 | Hours | 7/23/16 - 7/26/16 | 60.00 | |
| 15 | Equipment | 1 Truck per day | 75.00 | 1,125.00 |
| 1 | Expendables | Expendables | 887.56 | 887.56 |
| 1 | Equipment | Rental Equipment (Sunbelt) | 10,406.88 | 10,406.88 |

An additional 1.5% will be added if this invoice is not paid with in 30 days from the date of invoice

| **Total** | **$43,919.44** |

# Invoice

Taylor Industrial Construction, Inc.

1321 Shady Oak Ln
Jasper, FL 32052

| Date | Invoice # |
|------|-----------|
| 8/12/2016 | 2016-095 |

| Bill To |
|---------|
| Daniles Welding Service, Inc.<br>449 Bark RD<br>Ocilla, GA 31774 |

| Ship To |
|---------|
| |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| | Due Upon Invoice | 16180 | 8/12/2016 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | CONTRACT | Reinforce Bar Joist at the Walmart Distribution Center in Brookesville, FL | | |
| 1 | CONTRACT | Rental Equipment (Sunbelt) | 2,083.92 | 2,083.92 |

An additional 1.5% will be added if this invoice is not paid with in 30 days from the date of invoice

**Total** $2,083.92

**Exhibit 5**



**TAYLOR**
INDUSTRIAL CONSTRUCTION, INC.

1321 SHADY OAK LN - JASPER, FLORIDA 32052
PHONE (386) 792-3000 - FAX (386) 792-3001

Daniels Welding Services, Inc.
449 Bark Road
Ocilla, Georgia 31774
Attn: Bill Daniels

Re: Walmart Distribution Center Subcontract

Dear William,

      I write in reference to that certain contract and change order executed on July 8, 2016, by and between Daniels Welding Services, Inc. ("Daniels Welding") and Taylor Industrial Construction, Inc. ("Taylor") for service related to the reinforcement of bar joists at a Walmart distribution center in Brooksville, Florida (the "Contract"). This letter will confirm our conversation of July 19, 2016, which you advised Daniels Welding no longer wished Taylor to perform work under the Contract, and that Daniels Welding would perform the remainder of the work. Although you advised Daniels Welding no longer required Taylor's services, you gave no indication of any deficiency with the quality or performance of work performed by Taylor. Accordingly, and for the reasons described below, the Contract remains in effect and Taylor will continue to perform.

      As you know, under Section 11.3 of the Contract, Daniels Welding is to provide written notice to Taylor of any default by Taylor under the Contract, and Taylor shall have seven (7) days to cure such default. To date, Taylor has received no such notice; therefore, Taylor shall continue to perform its obligations under the Contract.

      Should you have any questions, or wish to discuss this matter further please do not hesitate to contact me.

Sincerely,

Gregory D. Taylor, President

**Exhibit 6**

Instr #2016046594 BK: 3388 PG: 1420, Filed & Recorded: 8/22/2016 12:25 PM LMT Deputy Clk, #Pgs:1
Don Barbee Jr,Clerk of the Circuit Court Hernando CO FL Rec Fees: $10.00





**Prepared by & return to:**
Taylor Industrial Construction, Inc.
c/o Greg Taylor
1321 Shady Oak Lane
Jasper, Florida 32052

**WARNING! THIS LEGAL DOCUMENT REFLECTS THAT A CONSTRUCTION LIEN HAS BEEN PLACED ON THE REAL PROPERTY LISTED HEREIN. UNLESS THE OWNER OF SUCH PROPERTY TAKES ACTION TO SHORTEN THE TIME PERIOD, THIS LIEN MAY REMAIN VALID FOR ONE YEAR FROM THE DATE OF RECORDING, AND SHALL EXPIRE AND BECOME NULL AND VOID THEREAFTER UNLESS LEGAL PROCEEDINGS HAVE BEEN COMMENCED TO FORECLOSE OR DISCHARGE THIS LIEN.**

## CLAIM OF LIEN

STATE OF FLORIDA     )
COUNTY OF HAMILTON   )

    BEFORE ME, the undersigned notary public, personally appeared Greg Taylor, who was duly sworn and says that he is the President of Taylor Industrial Construction, Inc., whose address is 1321 Shady Oak Lane, Jasper, Florida 32052 (the "**Lienor**"); and that in accordance with a contract with Daniels Welding Services, Inc., Lienor furnished labor, services, or materials consisting of to reinforce bar joists on the real property located at 5100 Kettering Road, Brooksville, Florida 34602 Parcel No. R09 423 21 0000 0020 0020 Parcel Key: 01220903 (the "**Property**"), owned by Wal-Mark Stores, Inc. ("**Owner**"), of a total value of approximately $194,400.00, of which there remains unpaid $175,453.36, and furnished the first of these items on June 25, 2016, and the last of the items on August 26, 2016; that the Lienor served its notice to the Owner on June 30, 2016, by U.S. Postal Service Certified Mail; and that the Lienor served copies of the notice to the contractor Slone Associates, Inc. (the "**Contractor**") on June 30, 2016, by U.S. Postal Service Certified Mail, and on the subcontractor Daniels Welding Services, Inc. (the "**Subcontractor**") on June 30, 2016, by U.S. Postal Service Certified Mail.

                                                         _____
                                         Greg Taylor, President, Taylor Industrial
                                         Construction, Inc.

STATE OF FLORIDA     )
COUNTY OF HAMILTON   )

    The foregoing instrument was acknowledged before me this _18th_ day of August, 2016, by Greg Taylor, as President of Taylor Industrial Construction, Inc., a Florida corporation, on behalf of the corporation, who is personally known to me or has produced _____ as identification.

                                        Sarah Ann Norman
                                        Notary Public at Large, State and County

**SARAH ANN NORMAN**
MY COMMISSION #FF008063
EXPIRES June 4, 2018
(407) 306-0153   FloridaNotaryService.com

Aforesaid
My commission expires: _06/04/2018_
Personally Known: __X__
Produced Identification: _____