UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


TAYLOR INDUSTRIAL CONSTRUCTION,
INC., a Florida corporation,

       Plaintiff,

v.                                       Case No. 8:16-cv-2960-T-SPF

WESTFIELD INSURANCE COMPANY,
an Ohio corporation,

       Defendant.
_____/

SLONE ASSOCIATES, INC.
a Georgia corporation,

       Counter-Plaintiff,

v.

TAYLOR INDUSTRIAL CONSTRUCTION,
INC.,  a Florida corporation,

       Counter-Defendant.
_____/


## ORDER

       This is an action by a sub-subcontractor, Plaintiff Taylor Industrial Construction, Inc.

("Taylor"), to recover on a construction lien, which was bonded off, and, in which, the

general contractor, Counter-Plaintiff Slone Associates, Inc. ("Slone"), filed a counterclaim

for fraudulent claim of lien.  The parties have filed cross-motions for summary judgment,

which are now ripe for review.

## I.    BACKGROUND

This construction-litigation dispute over payment for welding steel reinforcement joints to the ceiling area of a WalMart distribution center (the "Project") in Brooksville, Florida, involves a general contractor, a subcontractor, sub-subcontractors, and a surety.  On or about May 9, 2016, Slone was hired to provide construction-related services and materials for the Project under a prime contract (the "Prime Contract") with Wal-Mart.  Doc. 28 at ¶ 11.    In conjunction with the Prime Contract, Slone entered into a subcontract (the "Subcontract") with Daniels Welding Services, Inc. ("Daniels") to perform certain roof joist reinforcement work at the Project in exchange for Slone's payment of the total contract price of $555,769.00 to Daniels.  *Id.* at ¶ 12.  Taylor was hired by Daniels to replace a prior sub-subcontractor, Suwanee Iron Works ("Suwanee"), that Daniels terminated for poor performance.  On or around June 25, 2016, Taylor began performing welding work as a sub-subcontractor.  Doc. 1 at ¶ 15.  On July 8, 2016, Taylor and Daniels reduced the sub-subcontract to writing.  The Daniels/Taylor sub-subcontract was originally a fixed price contract in the amount of $194,400.00 (the "Agreement").  Doc. 1-4.  Daniels and Taylor then entered into a change order (the "Change Order") for compensation to be calculated instead on a time and materials basis.[1]  *Id.*  Under the Change Order, Daniels agreed to pay Taylor $60.00 per hour for its work, which included "all overhead and profit."  *Id.*

In late July 2016, Daniels notified Slone of its intent to discontinue working on the Project.  Shortly thereafter, Taylor received a similar notice from Daniels.  Taylor responded in writing that unless termination was properly made under the express terms of the Contract, Taylor intended to continue to perform.  Taylor then contacted Slone and asked to be kept on

---

[1] The Agreement and Change Order are hereinafter referred to collectively as the "Contract."

the Project, but Slone informed Taylor that it had already hired another welding company, Champco, Inc. ("Champco"), to complete the work. As a result, Taylor left the Project on July 26, 2016.

Taylor, having not been paid by Daniels for its work, filed a construction lien (the "Claim of Lien" or "Lien") on August 22, 2016. On September 29, 2016, Slone bonded off Taylor's Lien with a lien transfer bond (the "Bond") with Slone as principal and Defendant Westfield Insurance Company ("Westfield") as surety, removing Taylor's Claim of Lien from the property and transferring the Lien to the Bond pursuant to Florida Statute § 713.24.

On October 19, 2016, Taylor filed a one-count complaint against Westfield seeking to collect $175,453.36 (plus reasonable attorneys' fees, costs and interest) on the Bond. Four months later, Slone moved to intervene, seeking to file an intervenor complaint against Taylor and third-party Daniels. Slone's complaint alleged a fraudulent lien claim against Taylor and five claims against Daniels. *See* Doc. 28. Daniels' motion to dismiss Slone's claims against it based on their subcontract's forum selection clause was granted by the Court, and Daniels is no longer a party in this case. *See* Doc. 72.

Taylor's Motion for Summary Judgment against Slone (Doc. 109) seeks a finding that Taylor's Lien is not fraudulent, and its Motion for Summary Judgment against Westfield (Doc. 110) seeks the same relief in addition to summary judgment on its bond claim against Westfield. Westfield's Motion for Summary Judgment (Doc. 86) seeks a declaration that the Lien is fraudulent and a discharge of the Bond issued by Westfield. Slone joined in Westfield's motion (Doc. 99) seeking the same relief. The main issue to be decided amongst the parties' numerous motions, responses and replies is whether Taylor's Lien is enforceable. Taylor has established that there are no genuine issues of material fact as to the enforceability

of the Lien, which subsumes the issue of whether the Lien is fraudulent. A corollary issue relates to the Declaration of Taylor's President, Greg Taylor ("Mr. Taylor") (Doc. 93-2), which Taylor filed along with its opposition (Doc. 93) to Westfield's Motion for Summary Judgment (Doc. 86). Westfield moves to strike Mr. Taylor's Declaration on multiple bases: Mr. Taylor's assertions are inadmissible testimony that cannot be considered by the Court; portions of the Declaration lack relevance to the motion for summary judgment; the Declaration is inconsistent with Mr. Taylor's prior sworn testimony[2]; the Declaration was filed in bad faith in violation of Rule 56(h). Doc. 94. Upon review, none of the bases, however, warrant striking the Declaration.

## II. DISCUSSION

### A. Motion to Strike Greg Taylor's Declaration

A motion to strike will "usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Seibel v. Society Lease, Inc.*, 969 F. Supp. 713, 715 (M.D. Fla. 1997) (citations omitted). Because this is a difficult standard to satisfy, "[m]otions to strike … are not favored, often being considered time wasters." *Somerset Pharm., Inc., v. Kimball*, 168 F.R.D. 69, 71 (M.D. Fla. 1996) (internal quotations omitted). Federal Rule of Civil Procedure 56(c)(4) governs the submission of affidavits and declarations supporting summary judgment motions and states that an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters." Fed. R. Civ. P. 56(c)(4).

---

[2] The prior sworn testimony refers to the deposition of Mr. Taylor, which transcript was filed in support of Westfield's Motion for Summary Judgment. Doc. 88-1.

When a party has given clear answers to unambiguous deposition questions which negate existence of any genuine issue of material fact, that party cannot thereafter create such issue and thereby defeat summary judgment with an affidavit that merely contradicts, without explanation, previously given testimony; such an affidavit would be a sham. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003) (citations omitted). However, that is not the case here. There is no direct contradiction between Mr. Taylor's deposition testimony and the testimony in his Declaration, and there is no basis for Westfield's assertion that it was made in bad faith. In addition, the Eleventh Circuit has stated that, in some circumstances, otherwise admissible evidence may be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form. *Henry v. Colonial Baking Co.*, 952 F. Supp. 744, 749-50 (M.D. Ala. 1996) (citing *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996)). For the reasons stated in Taylor's response to Westfield's motion to strike, the Court finds the statements in the Declaration admissible as summary judgment evidence. Finally, Westfield fails to cite any authority in support of its argument that portions of the Declaration lack relevance to the motion for summary judgment and therefore should be stricken. Furthermore, the Court is equipped to disregard any such irrelevant inclusion. As such, the Court denies Westfield's Motion to Strike Mr. Taylor's Declaration.

Westfield's motion is also denied on the alternative basis that it fails to comply with Local Rule 3.01(g). Local Rule 3.01(g) requires a party to confer with opposing counsel in a good faith effort to resolve an issue before filing a motion. Section I.A.2 of the *Middle District Discovery Handbook* explains "confer" means "a substantive discussion." It adds: "Many potential ... disputes are resolved (or the differences narrowed or clarified) when counsel

confer in good faith. Rule 3.01(g) is strictly enforced. A motion that does not comply with the rule may be summarily denied." *Discovery Handbook* § I.A.2; *see also Miller v. Summers,* No. 2:14-cv-347-FtM-38DNF, 2015 WL 12859329, at *1-2 (M.D. Fla. Sept. 25, 2015) (finding that a party's motions to strike were procedurally barred for failure to comply with Local Rule 3.01(g) and denying the motions on that basis).

## B. Motions for Summary Judgment on Validity of the Lien

Summary judgment is appropriate if all the pleadings, discovery, affidavits, and disclosure materials on file show that there is no genuine disputed issue of material fact, and the movant is entitled to judgment as matter of law. *See* Fed. R. Civ. P. 56(a) and (c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is material if it is a legal element of the claim that may affect the outcome of the suit under the substantive governing law. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, the court must view the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must go beyond the pleadings and

"identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mtn. Park, Ltd. v. Oliver,* 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson,* 477 U.S. at 252).

When a contractor is owed money for either labor, services, materials, or other items used to improve real property in accordance with a contract, Florida Statute § 713.05 allows a contractor to assert a claim of lien on the real property that he has improved. "[T]he fundamental purpose of the Construction Lien Law is to protect those who have provided labor and materials for the improvement of real property. It is to be construed favorably so as to give laborers and suppliers the greatest protection compatible with justice and equity." *WMS Constr., Inc. v. Palm Springs Mile Assocs., Ltd.*, 762 So.2d 973, 974-75 (Fla. 3d DCA 2000) (citations omitted). "The mechanics lien law was enacted to protect the interests of subcontractors and materialmen who remain unpaid while the owner pays the contractor directly." *Hardrives Co. v. Tri–County Concrete Prods., Inc.*, 489 So.2d 1211, 1212 (Fla. 4th DCA 1986) (citation omitted).

Generally, in order to succeed on a claim of lien transferred to a bond pursuant Florida Statute § 713.24, a lienor who is not in privity with the owner must show it: (i) timely and properly served a statutorily-compliant notice to owner, (ii) timely recorded a claim of lien within 90 days of last performing work on the project, (iii) filed suit to foreclose within one

year of recording the claim of lien, and (iv) that such lien is for labor, services and/or materials actually incorporated into the project in accordance with the lienor's contract and the contract between the owner and the contractor. *See, generally,* Fla. Stat. §§ 713.06, 713.08. There is no dispute that the first three elements have been met by Taylor. It is the fourth element that is at issue here.

On the other hand, Florida Statute § 713.31 protects the owner of the property by providing a remedy for fraud or collusion on the part of the contractor. In pertinent part, § 713.31 reads as follows:

> (2)(a) Any lien asserted ... in which the lienor has willfully exaggerated the amount for which such lien is claimed or in which the lienor has willfully included a claim for work not performed upon or materials not furnished for the property upon which he or she seeks to impress such lien ... shall be deemed a fraudulent lien.

> (b) It is a complete defense to any action to enforce a lien ... that the lien is a fraudulent lien; and the court so finding is empowered to and shall declare the lien unenforceable, and the lienor thereupon forfeits his or her right to any lien on the property upon which he or she sought to impress such fraudulent lien.

Fla. Stat. § 713.31(2)(a) & (b). A fraudulent lien may not be enforced; the lienor forfeits his or her right to any lien on the property on which he or she sought to impose the fraudulent lien. *See* Fla. Stat. § 713.31(2)(b). As such, a determination that a lien is fraudulent is a complete defense to the enforcement of the lien. *See id.*

Under Florida law, a lien is fraudulent if the lienor has willfully exaggerated the amount, willfully included a claim for work not performed or materials not furnished, or compiled the claim with such willful or gross negligence as to amount to a willful exaggeration. *See* Fla. Stat. § 713.31(2)(a). However, § 713.31(2)(b) was amended in 1991 to preclude the finding of a fraudulent lien based upon a minor mistake or a good faith dispute as to the amount owed. Fla. Stat. § 713.31(2)(b).

Taylor argues that its Lien is for labor, services and/or materials actually incorporated into the project in accordance with its Contract and the contract between the owner and the contractor and is enforceable. Fla. Stat. §§ 713.06, 713.08. Westfield[3] argues that Taylor's Lien is fraudulent because: (1) it includes time billed for allegedly defective work; (2) it includes time and costs not authorized under the Contract; and (3) it was compiled in a grossly negligent manner. Taylor counters that the totality of Westfield's arguments, at best, could only amount to a good faith dispute as to the amount owed and does not constitute a fraudulent lien. Upon review, the Court finds Taylor has established that its Lien is for labor, services and/or materials actually incorporated into the project in accordance with its Contract and the contract between the owner and the contractor, and Westfield's assertions of fraud lack substantive support.

1. Amounts included for allegedly defective work

Taylor asserts that Westfield's allegations of defective work were not made until after the Lien was filed and that Taylor was not given the notice and opportunity to cure any defects as required under the Contract. Taylor argues that the face amount of the Lien is the sum of Taylor's four invoices on the project: $175,453.36, none of which had been objected to by Slone, Daniels, or anyone else at the time the Lien was filed. Doc. 1-5. Westfield contends that Taylor's Lien includes amounts for defective work and for labor and materials expended in correcting known deficiencies during its time on the project, including work performed by an employee whose poor quality and unsatisfactory workmanship caused his termination by Taylor. Westfield asserts that this time is not collectable under the terms of the Contract

---

[3] And, by joinder, Slone; however, the Court will refer to both movants as "Westfield" for ease of reference.

between Daniels and Taylor because the Contract provides that Taylor shall be paid for work that is "satisfactory" and complete. *See* Doc. 1-4. In other words, Westfield argues that Taylor should not have included any time for the work of an employee that was fired by Taylor for unsatisfactory work or for time spent correcting that employee's work.

As for the quality of Taylor's work, it is undisputed that an inspector from ATC Associates, Inc. ("ATC") performed an inspection while Taylor was on-site on July 17, 2016, and after Taylor had performed 1,600 of its 2,682.5 hours of work. Doc. 108-11, Daniels Depo. at 148:6-12. The inspector indicated to Taylor's supervisor, Dwayne McHaney, "no problem with joist…. [p]assed 1st inspection." Doc. 108-5 at 80, McHaney Depo., Ex. 3 at 1. Slone's representative also received notice from the inspector that "it looked good with just a couple of minor 'redos.'" Doc. 108-7 at 134, W. Slone Depo., Ex. 28, Tay00127. ATC then drafted a report noting that work was still in progress and without any mention of defects. Doc. 108-5 at 87, McHaney Depo., Ex. 5, Tay00003. In addition, none of Slone's Daily Job Reports created while Taylor was on-site note deficiencies in Taylor's welding. Doc. 108-7, W. Slone Depo., Ex. 28, Tay00117-00132. In contrast, deficiencies were noted on Slone's Daily Job Reports for Suwanee's work. Doc. 108-7, W. Slone Depo., Ex. 28, Tay00111, 00113.

Westfield contends that the work performed by Taylor had to be entirely redone by Champco. *See* Doc. 108-7, W. Slone Depo. at 80:16-19, 11:22-12:9; Doc. 128-6, J. Klug Depo. at 28:1-11, 54:5-8. Westfield relies, in part, on a "Structural Steel Observation Report" by ATC dated August 24, 2016, in which the same ATC inspector performed a visual welding and bolting inspection and concluded that "[a]ll the steel joist inspected in the above areas need correction in the work that had been done." Doc. 28-2. The reason, however, that the

Court cannot give any weight to this second report or the contention that all of Taylor's work had to be redone is the lack of connection between the allegedly defective work and the work done by Taylor. *See, e.g.*, Doc. 108-2, R. Mafla Depo. at 207:8-22 (ATC inspector testifying he is unable to identify the person or company responsible for any particular weld in his report); Doc. 110-4, Westfield's Responses, Interrog. #3, pp. 4-5 ("Westfield is not familiar with the specific work on each joist of the Project. Westfield is not in possession of documents reflecting the work performed."). While Taylor performed work in Phase D addressing Suwanee's previous work and performed some work in Phase C, Suwanee, Taylor and Champco all performed joist welding during the duration of the Project, and all evidence of any allegedly defective welding was destroyed when Slone directed Champco to complete the Project. The record is devoid of competent evidence regarding whether the deficient or incomplete welding was actually performed by Taylor or another sub-subcontractor and whether the incomplete welds, if left incomplete by Taylor, were left incomplete by virtue of Taylor's poor performance or because Taylor was asked to leave the job prior to be able to complete the welds. Doc. 93-2, G. Taylor Decl. at ¶¶ 19, 21, 33; Doc. 108-5, McHaney Depo. at 100:10-18. As such, Westfield has failed to submit competent evidence to prove that Taylor's work was defective.[4]

---

[4] The Court is under no obligation to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996); *see also Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996) (Rule 56 does not impose duty on district court to survey entire record in search of evidence to support non-movant's opposition); *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) ("If somewhere in a record there is evidence that might show a dispute of material fact, the district court needs to be pointed to that evidence as opposed to having to engage in an extensive search."); *Samuel v. Granite Servs. Int'l, Inc.*, No. 8:15-CV-2072-T-33TGW, 2016 WL 11493322, at *9 (M.D. Fla. Nov. 23, 2016) ("it is the party opposing summary judgment, and not the Court, that bears the burden of perusing the record to find evidence creating genuine issues of material fact") (citing *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, No. 6:14-cv-

Even if Westfield was able to establish that Taylor's work was defective, Taylor was entitled to an opportunity to cure any such defective work, which it was not provided. The Contract includes a provision by which Daniels had to give Taylor written notice and opportunity to cure any defects or deficiencies identified in its work within seven business days of the written notice. Doc. 1-4 at 5, ¶¶ 11.1, 11.3. In addition, Slone was contractually obligated to provide written notice and opportunity to cure within 24 hours to Daniels. *See* Doc. 28-1 at ¶ 3(h). Slone sent Daniels a notice of defects in its work on November 22, 2016, subsequent to Taylor filing this action. Doc. 28-3. This notice, however, did not comply with Slone's contract with Daniels in that it was not offering an opportunity to cure within 24 hours to Daniels. In fact, an opportunity to cure could not be given on November 22, 2016, as Champco had already completed the welding work on the Project by this time.[5] In any event, neither Slone nor Daniels sent notice to Taylor, and there is no dispute that Taylor was never notified of any defects in its workmanship prior to filing its Lien. In fact, Taylor alleges, and Westfield does not dispute, that it has never received such notice. As such, Westfield should not now be heard to complain about having to pay another subcontractor to repair work that it could have had Taylor repair without expense or to complain that Taylor's Lien is fraudulent because it includes charges for allegedly defective work of which Taylor was not

---

2004-Orl-40KRS, 2016 WL 6645814, at *1 (M.D. Fla. Nov. 4, 2016) ("the Court is under no obligation to search through ... depositions and declarations in search of evidence contradicting arguments made by Defendants"); *Lusco v. Univ. Realty of Tampa*, No. 8:13-cv-420-T-33EAJ, 2014 WL 1152934, at *6 (M.D. Fla. Mar. 21, 2014) ("It is the obligation of the non-moving party ... not the court, to scour the record in search of the evidence that would defeat a motion for summary judgment.")).

[5] Champco worked on the Project from late July/early August 2016, for about 10-12 weeks until approximately the end of October 2016. *See* Doc. 128-6, J. Klug Depo. at 11:25-12:10, 25:16-21, 30:6-8.

made aware or given the opportunity to correct. *See Underwater Eng'g Servs., Inc. v. Util. Bd.*, 194 So.3d 437, 445-46 (Fla. 3d DCA 2016) (court erred in finding in favor of defendant where defendant did not give plaintiff the opportunity to repair work as explicitly required in the contract); *Magnum Constr. Mgmt. Corp. v. City of Miami Beach*, 209 So.3d 51, 55 (Fla. 3d DCA 2016) (contactor not liable for defects because the City never provided it "with an opportunity to cure the defects in the playground, as required by the contract documents").

Westfield argues, without citing any supporting authority, that there was no privity of contract between Slone and Taylor, and, therefore, Slone was not contractually obligated to notify Taylor of the alleged defects. The Court disagrees. Florida's lien statutes protect a subcontractor's property interest in its contract with a broad concept of privity. "The word 'privity' as used in the lien statute, providing for the acquisition of liens by persons in privity with the owner, against the latter's real property, it not employed in the technical sense of the common law, but implies special knowledge showing active consent or concurrence." *Foley Lumber Co. v. Koester*, 61 So.2d 634, 639 (Fla. 1952). Here, Slone received, reviewed, and approved Taylor's Contract, and thusly had express knowledge of its terms. *See* Doc. 110 at 3, 15; *see also* J. Slone Depo. at 51:23-52:4, 54:10-15. The Court notes that many of Westfield's own arguments require a broad concept of privity as they wield the terms of the Contract, when favorable, as parameters of Taylor's Lien rights. *See, e.g.*, Doc. 131 at 6 ("Taylor has failed to identify **any** provision of **any** contract or change order with Daniels which authorizes such lodging charges." (emphasis in the original); "[A]lthough not authorized by the sub-contract, Taylor wrongfully charged $1,125 for its employees' use of Taylor's trucks for travelling to or from the job site."). The statute itself grants Taylor a lien "for any money owed him or her for labor, services, or materials *furnished in accordance with her or her*

*contract…."* Fla. Stat. § 713.06 (emphasis added).[6]  As such, Slone's failure to give Taylor notice of defects and a chance to cure forecloses Westfield's arguments for a fraudulent lien or deductions from Taylor's invoices for defective work.

As for Taylor's terminated employee, Tobe Cain, Cain worked two 12-hour shifts on July 9 and 10, and for less than two hours on July 11.  Doc. 93-2 at 24-25.  Cain was terminated by Taylor on July 11 for "poor quality, unsatisfactory work" because "[h]is welds was [sic] inconsistent."  Doc. 108-5, McHaney Depo. at 77:14-78:7.  Taylor did not bill for Cain's time for July 11.  Doc. 93-2 at 25.  There is no evidence that Taylor should have deducted more than Cain's time on July 11.  To the contrary, Daniels approved of the time submitted by Taylor.

### 2. Other costs allegedly not authorized by or collectable under Taylor's Contract

Taylor argues that the costs included in the Lien were all authorized and collectable under the Contract.  Westfield asserts that costs such as water, rest, or food breaks and lodging were not authorized by or collectible under Taylor's Contract and that Taylor cannot include any costs in the Lien that are not directly associated with the provision of work or materials on the Project.  Westfield, however, fails to cite to any authority that supports this proposition.

The case law cited by Westfield holds that a lien can be deemed fraudulent when costs are included that are not attributable to improvements of the real property when there is no contract or that a lien can be deemed fraudulent when costs are claimed that are not included in the contract price.  *See, e.g., In re Hayes*, 305 B.R. 361, 366 (Bankr. M.D. Fla. 2003) (lien

---

[6] Regardless of any contractual obligation, the fact that Taylor was without any knowledge of any alleged defects is relevant to question of whether the allegedly defective work was improperly included in the Claim of Lien and whether the Lien is fraudulent.

fraudulent due to failure to comply with contract procedures regarding delay damages, which were improperly included in the lien amount); *Onionskin, Inc. v. DeCiccio*, 720 So.2d 257, 258 (5th DCA Fla. 1998) (lien willfully exaggerated amount when it included alleged breach of the contract costs, such as delay expenses, outside the fixed price contract amount); *Martin v. Jack Yanks Constr. Co.*, 650 So.2d 120, 121-22 (Fla. 3d DCA 1995) (finding recovery for overhead and profit as separate items are not within the purview of the lien law when there is no valid contract and where contractor had done little to no work and had asserted "a lien for non-lienable items in an amount far beyond anything that could have possibly been owed to the contractor"); *Sharrard v. Ligon*, 892 So.2d 1092, 1097 (Fla. 2d DCA 2004) (lien fraudulent when claim of lien exaggerated by inclusion of amounts not recoverable under the cost-plus contract such as non-existent workers' compensation coverage), *superseded by statute on other grounds as stated in Newman v. Guerra*, 208 So.3d 314, 319 (Fla. 4th DCA 2017); *Viyella Co. v. Gomes*, 657 So.2d 83, 84 (Fla. 3d DCA 1995) (lien fraudulent when claim of lien was for the remainder of the contract price but substantial portion of the work claimed had not been completed). The case law, however, does not provide that costs included in the contract price cannot be included in the lien if the costs are not directly associated with the actual provision of labor or materials to the project. In addition, Westfield has not established that breaks and lodging are not directly associated with the provision of labor to the project.

> In estimating the reasonable value of work and labor actually furnished (where the contract has been terminated without fault of the materialman or contractor) such factors as the actual cost of work done and materials supplied, including the overhead and profit, wages paid to employees performing the labor supervision and rentals of equipment furnished in the improvement, may be considered. 53 Am. Jur. 2d Mechanics' Liens §§ 103-107, 245; *see also Rebisso, Inc. v. Frick*, 1953, 159 Ohio St. 449, 112 N.E. 2d 651; *cf. Surf Properties v. Markowitz Bros.*, Fla. 1954, 75 So. 2d 298. Such items, as Separate items, are nonlienable but become lienable when they are included in a contract price or reflected in the reasonable value of labor or materials furnished.

*Haney Chevrolet, Inc. v. Poli Bros., Inc.*, 262 So.2d 230, 231 (Fla. 4th DCA 1972); *see also Sprinkler Fitters & Apprentices Local Union No. 821, U.A. v. F.I.T.R. Serv. Corp.*, 461 So.2d 144, 151 n. 5 (Fla. 3d DCA 1984) (Pearson, J., concurring in part, dissenting in part). Here, Taylor's Contract includes overhead and profit in the agreed hourly rate. The Court also notes that Florida Statute § 713.05 states that a contractor is permitted to have a lien on improved real property for any money that is owed "for labor, services, materials, or other items required by, or furnished in accordance with, the direct contract…." Fla. Stat. § 713.05. The negotiated labor rate of $60/hour clearly falls under the auspices of the statute.

The time-and-materials Contract does not specifically discuss or exclude any of the disputed costs from the flat labor rate of $60/hour. Taylor argues that flat rate for labor and percentage mark-ups for materials costs provided for in the time-and-materials contract are all inclusive for Taylor; that is, they include payments to third parties, out-of-pocket costs, payments owed to Taylor's employees, taxes, lodging and meal expenses for out of town work sites, other expenses, and any amounts remaining are profits to Taylor. Doc. 93 at 6; Doc. 93-2, G. Taylor Decl. at ¶ 28. Moreover, the only evidence regarding the parties' communications as to breaks, to the extent it is relevant,[7] is an email dated July 1, 2016, from William Slone, Vice President of Slone, to Bill Daniels, President of Daniels, with Justin Slone, President and owner of Slone, copied that questions whether Taylor's $60/hour flat rate was for time actually spent on the job and whether lunch and breaks were excluded in

_____

[7] *See Peach State Roofing, Inc. v. 2224 S. Trail Corp.*, 3 So.3d 442, 445 (Fla. 2d DCA 2009) (reversing trial court for considering a party's testimony to supply an implied term about custom and usage not found in an unambiguous contract); *Madsen, Sapp, Mena, Rodriguez & Co. v. Palm Beach Polo Holdings, Inc.*, 899 So.2d 435, 436 (Fla. 4th DCA 2005) (holding that a party's testimony cannot be considered as parole evidence to limit the fees agreed to under a contract).

the time calculations. Doc. 108-6, J. Slone Depo. at 46:18-47:25; Doc. 108-12 at 30. In the email, however, Slone does not object to said charges; he just questions whether they are included. In the email, William Slone also indicated that "Justin may have some other questions." Doc. 108-12 at 30. Justin Slone testified that he does not recall conveying any further questions. Doc. 108-6, J. Slone Depo. at 47:19-48:7. Likewise, while Bill Daniel testified that "[o]nly time that was spent by Taylor's workers performing actual work was to be included in Taylor's time under our agreement or any modifications that were made to our agreement," such an interpretation is contradicted by the fact that Daniels agreed to Taylor's hours when Bill Daniels or his authorized representative signed Taylor's timesheets. Doc. 125-1, Daniels Aff. at ¶ 14; Doc. 88-1, G. Taylor Depo. at 39:10-40:7; Doc. 93-2, G. Taylor Decl. at ¶ 31. It is similarly contradicted by Bill Daniels when he testified that "I don't ever recall --" when asked if there was ever a time when he told Taylor that they could not charge for water breaks or food breaks. *See* Doc. 128-2, Daniels Depo. at 66:18-67:5. As such, Westfield has failed to establish a genuine issue of material fact that these costs were not collectable under the Contract and has not provided any authority that the costs should otherwise be excluded from the Lien by law. In addition, Westfield has not cited any authority holding that a contractual labor rate may be invalidated or reduced under § 713.06(1). As such, the Court finds that it was not improper for Taylor to include overhead and profit, among other costs, such as lodging and meals, in its hourly rates, which were expressly agreed to by Daniels in the Contract. Moreover, even if the Court found that the Lien included improper items, it can and would, within its discretion, still conclude that the Lien was filed in good faith. *See Stevens v. Site Developers, Inc.*, 584 So.2d 1064 (Fla. 5th DCA 1991) (affirming trial court's finding good faith of lienor at time lien was claimed despite

amount of lien claimed being greatly in excess of amount of lien ultimately allowed by the trial judge).

Westfield also argues that a charge of $1,125 for employees' use of Taylor's trucks in traveling to and from the job site was not authorized by or contemplated under the Contract. The only support submitted, Bill Daniels' testimony stating, "that was not in our agreement," is undermined by the Contract itself.  Doc. 108-11, Daniels Depo. at 117:10-19.  The Contract states "4. Company owned equipment will be invoiced in accordance with industry standard rental rates."  Doc. 93-3 at 20.  Moreover, Westfield does not argue that the Contract is ambiguous or that the truck does not constitute "Company owned equipment" under the Contract.  *See* Doc. 131 at 6.  As such, the Court finds that the charge is valid.

Westfield also asserts that the Lien is exaggerated by 12 hours not worked by Taylor resulting in an overcharge of $720.  Doc. 86 at 11-12.  In context, four invoices were provided to Daniels by Taylor with 2,682.5 hours of labor reflected.  Doc. 1-5.  Taylor states that it has carefully analyzed the amounts of labor charged under its Lien and that "[i]t appears that 14 hours of the 2,668.5 hours that appear on Taylor's invoices might be reasonably disputable … [t]hose 14 hours constitute 00.521 % of the hours claimed under Taylor's lien."  Doc. 110 at 9.  Specifically, Taylor explains that, on June 26th, it appears that sixteen, instead of fifteen, laborers may have been counted for Taylor's hours for June 25-27 resulting in the inclusion of twelve extra hours.  Doc. 110-2 at 4-5.  Taylor attributes this to human error in misreading handwriting on the timesheet, a mathematical error adding the numbers, typographical error, or similar mistake.  Doc. 110 at 9.  In addition, on July 2-4, 503 instead of 502 hours were included on Taylor's invoice.  Docs. 1-5 at 2; 110-2 at 2.  Similarly, on July 23-25, 525 hours instead of 524 hours were included on Taylor's invoice.  Docs. 1-5 at 4; 110-2 at 2.  In these

instances, Taylor argues that one extra hour may have been inadvertently included on those two invoices because on July 2 and July 23, one of Taylor's workers billed one hour less than all the others. Doc. 110 at 10. In addition, there is a discrepancy for materials in the amount of $272.37. *Id.* Taylor states it is willing to reduce its Lien by these amounts in order to avoid a dispute over a minor sum and to resolve the matter on summary judgment. Applying these write-offs of labor and materials, Taylor's Lien of $175,453.36 becomes $174,340.99.

The Court finds that these additional hours are not an instance of a contractor grossly inflating or willfully exaggerating the amount of a lien with work or expenses never actually incurred. *Compare Viyella Co.*, 657 So.2d at 84 (finding claim of lien fraudulent where a substantial portion of the claimed work had not been completed); *Hobbs Constr. & Dev., Inc. v. Presbyterian Homes of the Synod of Fla.,* 440 So.2d 673 (Fla. 1st DCA 1983) (holding claim of lien fraudulent because it included large amounts for work not authorized by the contract and based on invalid change orders). In addition, this reduction of the Lien by Taylor or by the Court does not equate to a fraudulent lien. *See Politano v. GPA Constr. Grp.*, 9 So.3d 15, 16 (Fla. 3d DCA 2008) (it does not follow that the lien is fraudulent just because the court reduces the amount of the lien); *Gator Boring & Trenching, Inc. v. Westra Constr. Corp.*, 210 So.3d 175, 183 (Fla. 2d DCA 2016) ("Moreover, simply because a court reduces the amount of a lien does not render the lien fraudulent.").

Finally, the Court notes that the seeking of advice of counsel for the preparation and filing of the lien is evidence relevant to the inquiry of intent and is to be considered along with other pertinent factors. *See Stevens*, 584 So.2d at 1064 (citing *William Dorsky Assocs., Inc. v. Highlands Cty. Title & Guar. Land Co.*, 528 So.2d 411, 412 (Fla. 2d DCA 1988) (relying on legal counsel to prepare the lien "strongly militate[s] against [the] contention that the lien was

fraudulent.")); *Sharrard*, 892 So.2d at 1097 (recognizing that a lienor's consultation with counsel before it files a claim of lien tends to show that the lienor was acting in good faith and is a factor to consider in determining whether a lien is fraudulent). The Court notes that the errors contained in the Lien were not the result of Taylor not fully advising his attorney or withholding information. *See Sharrard*, 892 So.2d at 1097 (consultation with counsel evidence of good faith only in the event of a full and complete disclosure of the pertinent facts to the attorney). In sum, the Court finds that these discrepancies are the result of minor mistakes or are attributable to a good faith dispute over the computation of amounts due.

### 3. Claim of Lien allegedly compiled with willful and gross negligence

Westfield next argues that Taylor's Lien contained numerous errors, and, as such, Taylor compiled the Lien with such willful or gross negligence as to amount to a willful exaggeration. Specifically, Westfield points to Mr. Taylor's testimony that he did not assist in preparing or reviewing the Lien, but rather simply provided documents to his attorney and signed the Claim of Lien without further review, as willful or gross negligence. *See* Doc. 88-1, G. Taylor Depo. at 99:21-22, 101:5-11, 101:24-103:23, 104:2-105:19. A closer review of the errors contained in the Lien reveal that the errors were only typographical in nature, and, more importantly, none adversely affected Westfield.

The date of execution of the Lien was stated as August 18, 2016, and Mr. Taylor testified that he believed it was actually signed on July 18, 2016. Doc. 88-1, G. Taylor Depo. at 99:23-101:23. Similarly, the Lien states that the last day of work on the job was August 26, 2016, when in fact it was July 29, 2016. Doc. 108-5, McHaney Depo. at 37:10, 60:19-22. Finally, the Lien states the Contract to be "of a total value of approximately $194,400.00, of which remains unpaid $175,453.36." Doc. 93-2, G. Taylor Decl. at ¶¶ 14, 24. Westfield fails

to show by a preponderance of the evidence that any of these errors adversely affected it. *See Sam Rodgers Props., Inc. v. Chmura*, 61 So.3d 432, 438 (Fla. 2d DCA 2011) ("'[T]he omission of any of the [statutorily required details] or errors in such claim of lien shall not, within the discretion of the trial court, prevent the enforcement of such lien as against one who has not been adversely affected by such omission or error.'" (quoting Fla. Stat. §713.08(4)(a)); *see also Stunkel v. Gazebo Landscaping Design, Inc.*, 660 So.2d 623, 626-27 (Fla. 1995); *Florida Wood Servs., Inc. v. Osprey Links Joint Venture,* 720 So.2d 591, 594-95 (Fla. 5th DCA 1998); *Centex–Winston Corp. v. Crown Paint, Inc.,* 294 So.2d 694, 695 (Fla. 3d DCA 1974). The amount listed on the Lien as the remaining unpaid amount, $175,453.36, is the total amount of Taylor's invoices to Daniels and the intended amount of the Lien. In fact, the amount of the Bond was calculated based off of the correct $175,453.36 amount for a total bond amount of $253,234.20. [8] Doc. 108-7, W. Slone Depo. at 41:6-11. Because the errors caused no adverse effects, the Court finds that the Lien was not compiled with willful or gross negligence as to amount to a willful exaggeration.

For the reasons stated, Taylor has demonstrated the absence of a genuine issue of material fact as to the validity of its Lien. The Lien is not fraudulent and is enforceable as a matter of law.

Accordingly, it is hereby **ORDERED**:

1) Westfield's Motion for Summary Judgment Against Plaintiff (Doc. 86) as joined

---

[8] Westfield makes a bare-bones argument that the errors "have prejudiced Slone in a number of ways," but fails to list any other than "they have caused Slone to post a more expensive bond in a higher principal sum." Doc. 131 at 12. Westfield, however, provides no additional information or support regarding the additional bond expense incurred as a result of any alleged overcharges being included in the Lien. Without more, this Court cannot find that this constitutes an adverse effect sufficient to prevent enforcement of the Lien.

in by Slone (Doc. 99) is **DENIED**.

2)  Taylor's Motion for Summary Judgment against Slone (Doc. 109) is **GRANTED**.

3)  Taylor's Motion for Summary Judgment against Westfield (Doc. 110) is **GRANTED**.

4)  Westfield's Motion to Strike Declaration of Greg Taylor (Doc. 94) is **DENIED**.

5)  Taylor's Motion for Exclusion of New Arguments and Facts Posited by Westfield and Slone, or in the Alternative, Motion for Leave to File a Surreply (Doc. 126) is **DENIED AS MOOT**.

6)  Taylor's Motion to Strike Jury Trial Designation (Doc. 140) is **DENIED AS MOOT**.

7)  Westfield and Slone's Motion in Limine (Doc. 141) is **DENIED AS MOOT**.

8)  Westfield and Slone's Motion to Exclude or Limit Testimony of Lyle Charles (Doc. 142) is **DENIED AS MOOT**.

9)  Taylor's Motion in Limine (Doc. 143) is **DENIED AS MOOT**.

10) The Clerk is directed to enter judgment in favor of Taylor and against Westfield in the amount of $174,340.99 and in favor of Taylor and against Slone.

11) The Clerk is directed to **CLOSE** this case.

**ORDERED** in Tampa, Florida, this 12th day of July 2019.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE