UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAYLOR INDUSTRIAL CONSTRUCTION,
INC., a Florida corporation,

        Plaintiff,

v.                                  Case No. 8:16-cv-2960-T-SPF

WESTFIELD INSURANCE COMPANY,
an Ohio corporation,

        Defendant.
_____/

SLONE ASSOCIATES, INC.
a Georgia corporation,

        Counter-Plaintiff,

v.

TAYLOR INDUSTRIAL CONSTRUCTION,
INC., a Florida corporation,

        Counter-Defendant.
_____/

## ORDER

      This is an action by a sub-subcontractor, Plaintiff Taylor Industrial Construction, Inc. ("Taylor"), to recover on a construction lien, which was bonded off, against Defendant Westfield Insurance Company ("Westfield") as surety and, in which, the general contractor, Slone Associates, Inc. ("Slone"), filed a third-party intervenor complaint against Taylor for fraudulent claim of lien. This Court entered granted summary judgment in favor of Taylor and against Slone and Westfield (collectively "Defendants") (Doc. 158) and judgment was entered in favor of Taylor and against Westfield in the amount of $174,340.99 and in favor of

Taylor and against Slone (Docs. 159 &160). This cause is now before the Court for consideration of Taylor's Motion for Fees and Costs Against Westfield and Slone (Doc. 161), Taylor's Supplemental Motion for Fees and Costs Against Westfield and Slone (Doc. 176), Defendants' Omnibus Response in Opposition thereto (Doc. 181), Taylor's Reply (Doc. 188), and Defendants' Sur-Reply (Doc. 193) as well as Taylor's related Motion to Require Additional Security (Doc. 166), Defendants' Response in Opposition thereto (Doc. 172), and Taylor's Reply (Doc. 180).

## I.    BACKGROUND

This construction-litigation dispute over payment for welding steel reinforcement joints to the ceiling area of a WalMart distribution center (the "Project") in Brooksville, Florida, involves a general contractor, a subcontractor, sub-subcontractors, and a surety. On or about May 9, 2016, Slone was hired to provide construction-related services and materials for the Project under a prime contract (the "Prime Contract") with Wal-Mart. Doc. 28 at ¶ 11. In conjunction with the Prime Contract, Slone entered into a subcontract with Daniels Welding Services, Inc. ("Daniels") to perform certain roof joist reinforcement work at the Project in exchange for Slone's payment of the total contract price of $555,769.00 to Daniels. *Id.* at ¶ 12. Taylor was hired by Daniels to replace a prior sub-subcontractor, Suwanee Iron Works, that Daniels terminated for poor performance. On or around June 25, 2016, Taylor began performing welding work as a sub-subcontractor. Doc. 1 at ¶ 15. On July 8, 2016, Taylor and Daniels reduced the sub-subcontract to writing. The Daniels/Taylor sub-subcontract was originally a fixed price contract in the amount of $194,400.00 (the "Agreement"). *See* Doc. 1-4. Daniels and Taylor then entered into a change order (the

"Change Order") for compensation to be calculated instead on a time and materials basis.[1] *Id.* Under the Change Order, Daniels agreed to pay Taylor $60.00 per hour for its work, which included "all overhead and profit." *Id.*

In late July 2016, Daniels notified Slone of its intent to discontinue working on the Project. Shortly thereafter, Taylor received a similar notice from Daniels. Taylor responded in writing that unless termination was properly made under the express terms of the Contract, Taylor intended to continue to perform. Taylor then contacted Slone and asked to be kept on the Project, but Slone informed Taylor that it had already hired another welding company, Champco, Inc., to complete the work. As a result, Taylor left the Project on July 26, 2016.

Taylor, having not been paid by Daniels for its work, filed a construction lien (the "Claim of Lien" or "Lien") on August 22, 2016. On September 29, 2016, Slone bonded off Taylor's Lien with a lien transfer bond (the "Bond") with Slone as principal and Westfield as surety, removing Taylor's Claim of Lien from the property and transferring the Lien to the Bond pursuant to Florida Statute § 713.24.

On October 19, 2016, Taylor filed a one-count complaint against Westfield seeking to collect $175,453.36 (plus reasonable attorneys' fees, costs, and interest) on the Bond. Four months later, Slone moved to intervene, seeking to file an intervenor complaint against Taylor and third-party Daniels. Slone's complaint alleged a fraudulent lien claim against Taylor and five claims against Daniels. *See* Doc. 28. Daniels' motion to dismiss Slone's claims against it based on their subcontract's forum selection clause was granted by the Court, and Daniels is no longer a party in this case. *See* Doc. 72. Summary judgment was granted in Taylor's favor against Defendants on July 12, 2019. *See* Doc. 158. Final judgments were entered on

---

[1] The Agreement and Change Order are hereinafter referred to collectively as the "Contract."

July 15, 2019 (Docs. 159 & 160).

## II.   DISCUSSION

### A.   Taylor's Motion for Fees and Costs Against Westfield and Slone

Defendants concede Taylor's entitlement to attorneys' fees and costs, which Taylor demanded pursuant to Florida Statutes §§ 713.29 and 713.31.  *See* Doc. 167 (notice of stipulating to Taylor's entitlement to an award of attorneys' fee in this matter).  The issues that remain to be resolved, therefore, are what constitutes a reasonable amount of attorneys' fees and whether Taylor is entitled to all the costs it seeks.  The Court notes that the parties' framing of these issues was far from a model of clarity.  For example, the amount of attorneys' fees sought by Taylor changed from $274,888.00 (Doc. 161) to $297,477.50 (Doc. 176) and finally settled at $285,346.75 (Doc. 188 at n.2).  Similarly, costs sought by Taylor started at $23,816.10 (Doc. 161) but decreased to $23,167.92 when Taylor withdrew its demand for postage[2] and a witness fee of $112.43 (Doc. 176 at 6) and ended up at $25,167.92 when Taylor then added an expert witness fee of $2,000 (Doc. 176 at 7).  Likewise, Defendants' sequence of arguments regarding reasonableness of attorneys' fees switched back and forth from hourly rates to hours that should be deducted.  *See* Doc. 181.  In addition, Defendants initially argued that attorneys' fees awarded should be reduced to $182,004.25 (Doc. 181) and then revised

---

[2] The Court was able to deduce that the amount of "postage" costs being withdrawn by Taylor was $535.75 (original amount of claimed costs of $23,816.10 minus reduced amount of claimed costs of $23,167.92 = $648.18; $648.18 minus withdrawn witness fee of $112.43 = $535.75).  However, the $535.75 "postage" amount seems to be comprised of all line-items on Taylor's costs chart identified as "postage" (totaling $35.75) and a cost item identified as "First American Title Insurance Company; Outside Professional Services" ($500.00). *See* Taylor's summary chart of costs at Doc. 161-3; compare with Taylor's revised summary chart of costs at Doc. 176-1.  Taylor, however, did not deduct other costs that appear to be mailing or courier costs: "Thunderbird Express; Courier to/from U.S. Federal Court, Tampa 10-19-16" ($216.40) and "FedEx; Express Mail to/from Irwin County Sheriff's Office 10-01-18" ($26.21).  Entitlement to these additional postage costs is discussed below.

that amount to $191,004.25 (Doc. 193 at 10) based on a "minimal inadvertent duplication" of some of Taylor's attorneys' fees write-offs being included in Defendants' objections (Doc. 193 at 2).  The Court has sorted and addressed all the relevant issues below.

1. <u>Attorneys' Fees</u>

When a claim for fees is based on a state statute and is raised in a diversity case, a federal court must follow the substantive law of the state in making its determination.  *Trans Coastal Roofing Co., Inc. v. David Boland Inc.*, 309 F.3d 758, 760 (11th Cir. 2002).  Florida has adopted the federal lodestar approach to the setting of a reasonable attorney's fee.  *Florida Patient's Comp. Fund v. Rowe*, 472 So.2d 1145, 1150-51 (Fla. 1985).  To calculate an award of attorneys' fees under the lodestar method, a court must multiply the reasonable hourly rate by the reasonable hours expended in the litigation.  *See Blum v. Stenson*, 465 U.S. 886, 888 (1984) (citing *Hensley v. Eckerhart,* 461 U.S. 424 (1983)).  A final lodestar amount "embodies a presumptively reasonable fee."  *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1164 (11th Cir. 2017) (citation omitted).

Defendants assert that, under Florida law, an evidentiary hearing must be conducted to determine the amount of reasonable attorneys' fees absent waiver.  Even under Florida law, however, an evidentiary hearing may not be required in every case.  *See Phillips v. Florida Comm'n on Human Relations*, 846 So.2d 1221 (Fla. 5th DCA 2003) (determining fee award based on affidavits); *but see Nants v. Griffin*, 783 So.2d 363, 365 (Fla. 5th DCA 2001) ("[A] court's reliance solely on affidavits to determine the reasonableness of attorney's fee constitutes error.").  Regardless, under Eleventh Circuit law, a court is not required to hold an evidentiary hearing to decide a motion for attorney's fees. *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("It is perfectly proper to award attorney's

fees based solely on affidavits in the record."). To the extent that Florida law and federal law conflict on this point, federal law controls. *See Schafler v. Fairway Park Condo. Ass'n*, 324 F. Supp. 2d 1302, 1311 (S.D. Fla. 2004) (finding that both federal and Florida law allow for attorney's fee awards to be based on affidavits and billing records without the need for an evidentiary hearing and determining that, even if Florida law conflicted with federal law on this point, the rule is procedural and federal law controls). Because the record is sufficiently clear, the Court finds an evidentiary hearing unnecessary.

a. Reasonable Hourly Rate

A "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299 (citations omitted). Plaintiff "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id.* However, "[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* at 1303 (quotation omitted).

Taylor requests the following hourly rates for the following practitioners: (1) $450/hour for Michael C. Sasso, an attorney with 36 years of experience, and for David F. Tegeler, an attorney with 29 years of experience; (2) $300/hour for Michael A. Sasso, an attorney with 8 years of experience; (3) $250/hour for William Cochran, an associate attorney with 4 years of experience, Kevin McGavock, an associate attorney with 2 years of experience, and Christian Bonta, an associate attorney with 1 year of experience; (4) $125/hour for Kathy Devore and Wendy Gory, paralegals with at least 17 years of

6

experience; and $125/hour for Kirsten Williams, a law-school summer clerk.  Docs. 161-2 & 176 at 3.  To support the requested hourly rates, Taylor offers the Declaration of Nicholas A. Shannin (Doc. 164-1) and as well as the declarations and resumes of each attorney (Doc. 161-2).

Defendants argue that Michael A. Sasso's rate should be reduced from $300 per hour to $250 per hour.  Defendants similarly argue that the associate attorneys' rates should be reduced from $250 per hour to $200 per hour.  The basis asserted for these reductions is that each respective attorney required more time, oversight, and assistance to complete tasks than would be expected of a practitioner charging those respective rates.  Defendants rely exclusively upon their expert's declaration, who opines that the hours billed for routine tasks were excessive, which, in turn, indicates a level of practice that warrants a reduced hourly rate.  *See* Deeb Decl., Doc. 182-1 at ¶¶ 8, 10, 11.  The Court is unpersuaded that a reduction of rates, as opposed to hours, is warranted on this basis.  The experience level of the associate attorneys, however, may warrant a reduced rate.

It is well established that the Court may use its discretion and expertise to determine the appropriate hourly rate to be applied to an award of attorneys' fees.  *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002).  Having considered the experience of the respective attorneys, the complexity of the case, the Court's knowledge of market rates in the Tampa division, and the Court's findings regarding hourly rates in other cases, the Court finds that the $300 hourly rate billed by Michael A. Sasso is reasonable.  *See Norman*, 836 F.2d at 1303 (a court may use its own experience and knowledge to determine the reasonable value of attorney services); *Healthplan Servs., Inc. v. Dixit*, No. 8:18-cv-2608-T-23AAS, 2019 WL 7041837, at *2 (M.D. Fla. Dec. 20, 2019) (same); *Rabco Corp. v. Steele Plaza,*

*LLC*, No. 6:16-cv-1858-Orl-40LRH, 2019 WL 5188601, at *7-8 (M.D. Fla. July 29, 2019) (finding rate of $365/hour reasonable for attorney with seven years' experience), report and recommendation adopted, 2019 WL 5176284 (M.D. Fla. Aug. 13, 2019); *Hill v. Allianz Life Ins. Co. of N. Am.*, No. 6:14-cv-950-Orl-41KRS, 2018 WL 6983647, at *3-4 (M.D. Fla. Dec. 10, 2018) (finding rate of $300/hour reasonable for attorney with eight years' experience), report and recommendation adopted, No. 6:14-cv-950-Orl-41KRS at Doc. 168 (M.D. Fla. Feb. 26, 2019) (unreported).[3]

Using the same considerations, the Court finds that the requested hourly rate for the associate attorneys (all of whom have between one and four years of experience) is unreasonable and should be reduced from $250/hour to $200/hour. *See Truesdell v. Thomas*, No. 5:13-cv-552-Oc-10PRL, 2018 WL 6983508, at *3 (M.D. Fla. Nov. 8, 2018) (finding rate of $190/hour reasonable for associate attorneys with one or two years of experience) (citing *Anderson v. Blueshore Recovery Sys., LLC*, No. 3:15-CV-338-J-34JRK, 2016 WL 1317706, at *6 (M.D. Fla. Feb. 25, 2016), report and recommendation adopted, 2016 WL 1305288 (M.D. Fla. Apr. 4, 2016) (finding rate of $175/hour reasonable for associate attorney with about one year of experience)), report and recommendation adopted, 2018 WL 6620486 (M.D. Fla. Dec. 3, 2018); *Bostick v. State Farm Mut. Auto. Ins. Co.*, No. 8:16-cv-1400-T-33AAS, 2018 WL 3244015, at *10 (M.D. Fla. May 23, 2018) (finding rate of $175/hour reasonable for Tampa attorneys with two to seven years of experience), report and recommendation adopted, 2018 WL 3241258 (M.D. Fla. July 3, 2018); *Rynd v. Nationwide Mut. Fire Ins. Co.*, No. 8:09-CV-1556-T-27TGW, 2012 WL 939387, at *13-14 (M.D. Fla. Jan. 25, 2012) (awarding $200

---

[3] To the extent that Defendants' argument is as to reasonableness of the hours expended by Michael A. Sasso in regards to those hours used as examples as to why his hourly rate should be reduced, those objections are overruled as unsupported.

hourly rate for associate attorney with five years of litigation experience), report and recommendation adopted, 2012 WL 939247 (M.D. Fla. Mar. 20, 2012). Defendants do not object to the hourly rates requested for any of the other practitioners. *See Tacoronte v. Cohen*, No. 6:13-cv-418-Orl-18GJK, 2014 WL 5473567, at *1, 4 (M.D. Fla. Oct. 28, 2014) (approving as unopposed the hourly rates requested by the associates and paralegals/law clerks), *vacated and remanded on other grounds*, 654 F. App'x 445 (11th Cir. 2016). Accordingly, the Court will reduce the attorneys' fees sought by $9,615.00 (192.3 hours collectively billed by the associate attorneys x $50 reduction in hourly fee = $9,615.00).

b.   Reasonable Amount of Hours

Defendants' remaining objections are all as to the reasonableness of the hours billed as follows.

(1) Duplicative, clerical, or ministerial tasks by paralegals

Defendants argue that almost all of Taylor's paralegal time entries on this matter were clerical in nature, *i.e.*, calendaring, file management, document gathering, binder preparation, scheduling, ordering deposition transcripts, and processing witness payments. Defendants assert that 183.7 of the 241.75 paralegal hours billed should be deducted from Taylor's fee claim. In its Reply, Taylor acknowledges Defendants' argument but does not rebut it. Taylor states "Defendants object that approximately 76% of 241.75 hours of paralegal work was clerical, and not billable, (Doc. 181 at 11) (incorporating 182-1 at ¶¶8-9), and that 14.75 hours of attorney work is objectionable on the same grounds. (*Id.* at 15)." Doc. 188 at 4. Taylor goes on to address the objection as it relates to the attorney work but fails to address the objection as to the paralegal work.[4]

---

[4] The Court addresses Defendants' objection as to this attorney work separately below.

Paralegal fees are recoverable as part of an attorney's fees award. *See State Farm Mut. Auto. Ins. Co. v. Edge Family Chiropractic, P.A.*, 41 So. 3d 293, 296–97 (Fla. 1st DCA 2010) (citations omitted). However, hours expended on clerical or secretarial work should not be billed at a paralegal rate. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (stating "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); *see also Scelta*, 203 F. Supp. 2d at 1334 (concluding purely secretarial or clerical work is unrecoverable under an award for attorney's fees).

Here, Defendants have sufficiently identified in the attachment to their expert's declaration which of the paralegal hours should be deducted as clerical nor ministerial. *See* Deeb Decl., Doc. 182-1 at 8-61. In light of a lack of argument from Taylor in opposition to Defendants' objection and the Court's independent review, the Court sustains the objection and will deduct $22,962.50 (comprised of 183.7 hours x $125/hour = $22,962.50).

(2) Travel time

Defendants argue that 39.85 hours billed solely for travel should be deducted. Specifically, Defendants assert that Taylor is not entitled to the 39.85 hours Michael A. Sasso billed solely traveling to and/or from hearings, client meetings, and depositions.

Travel time is generally not compensable when setting a reasonable fee. *Eve's Garden, Inc. v. Upshaw & Upshaw, Inc.*, 801 So.2d 976, 979 (Fla. 2d DCA 2001) (citing *Belmont v. Belmont*, 761 So.2d 406 (Fla. 2d DCA 2000); *Gwen Fearing Real Estate, Inc. v. Wilson*, 430 So.2d 589 (Fla. 4th DCA 1983); *Chandler v. Chandler*, 330 So.2d 190, 191 (Fla. 2d DCA 1976) ("[W]e are faced with the question of whether travel time is properly included in an award of attorneys' fees. We think not.")). Exception may be made for a nonlocal counsel's travel time if there is proof that competent local counsel could not be obtained. *Dish Network Serv. L.L.C.*

10

*v. Myers*, 87 So.3d 72, 78-79 (Fla. 2d DCA 2012) ("In Florida, the longstanding rule is that an award of attorneys' fees should not include travel time 'without proof that a competent local attorney could not be obtained.'") (quoting *Mandel v. Decorator's Mart, Inc. of Deerfield Beach*, 965 So.2d 311, 315 (Fla. 4th DCA 2007)). While Taylor hired counsel in Orlando, Florida, no proof was offered that a competent local attorney could not be obtained. As such, $11,955.00 will be deducted for the 39.85 hours billed by Michael A. Sasso solely for travel (comprised of 39.85 hours x $300/hour = $11,955.00).

(3) Hours billed to withdraw Taylor's own jury demand

Defendants next argue that 19.45 hours billed by Taylor for attempting to withdraw its own jury demand should be deducted. This Court agrees. Taylor made a jury demand both in its Complaint (Doc. 1 at 5) and its Answer to Slone's Intervenor Complaint (Doc. 34 at 7). Taylor subsequently filed a "Notice of Consent to a Bench Trial and Withdraw of Demand for Trial by Jury" (Doc. 138). Defendants opposed the withdrawal as impermissibly unilateral pursuant to Federal Rules of Civil Procedure 38(d) and 39(a)(1). Doc. 139. Taylor then filed a Motion to Strike Jury Trial Designation (Doc. 140) pursuant to Federal Rule of Civil Procedure 39(1)(2), arguing that there were no claims remaining that were triable by a jury, but also contending, citing *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1089 (11th Cir. 2016), that when no right to a jury trial exists and where no prejudice will result, a party may unilaterally withdraw its consent to a jury trial. The Court, however, never ruled substantively on the issue and denied the motion as moot when summary judgment was granted in Taylor's favor. *See* Doc. 158. Defendants persuasively point out that the claims remaining when Taylor sought to withdraw the jury demand based on the premise that there were no remaining claims that were triable by a jury were the exact same claims alleged by or

11

against Taylor at the time Taylor originally made the jury demands.  In other words, Taylor made jury demands on claims it later argued were not triable by a jury.  As such, $5,410.00 for the hours Taylor spent attempting to withdraw its jury demands will be deducted (comprised of .5 hours by Tegeler at $450/hour, 13.95 hours by Michael A. Sasso at $300/hour, and, collectively, 5 hours by Bonta and Cochran at $200/hour = $5,410.00).

(4) Hours billed to prepare for trial after trial was "effectively" cancelled

Defendants contend that 55.75 hours billed for preparing for trial after the Court "effectively" cancelled trial should be deducted.  The Court's Order (Doc. 144) referenced by Defendants canceled the pretrial conference in anticipation of an order on all outstanding motions in the case, which, in turn, would inform the parties' pretrial statement and allow the parties to tailor the pretrial conference to the Court's rulings.  The Order specified that the pretrial conference would be rescheduled by separate order.  *See* Doc. 144.  The fact that Taylor objected, during a meet and confer, to Defendants requesting a trial continuance because the Court's Order "effectively" cancelled the trial is irrelevant to the reasonableness of Taylor's continued preparation in anticipation of an eventual trial.  The objection is without merit and overruled.

(5) Hours billed responding to Court's Order to Show Cause

Defendants assert that the 4.7 hours billed by Taylor responding to the Court's Order to Show Cause pertaining to Westfield's motion to dismiss should be deducted.  Westfield filed a motion to dismiss (Doc. 6) on November 14, 2016.  Three days later, Westfield filed its Answer (Doc. 7).  The Court entered an Order to Show Cause (Doc. 8) why the motion to dismiss should be considered without Taylor's response.  Taylor explained to the Court that it did not file a response to Westfield's motion to dismiss "because after discussion between

counsel Defendant agreed to withdraw said motion and instead filed Defendants Answer" and that, in addition, Taylor understood that by operation of law the filing of the Answer rendered the motion to dismiss moot.  *See* Doc. 11.  The Court subsequently entered an endorsed order (Doc. 12) terminating the motion to dismiss "due to the filing of an answer."

Defendants now argue that the Order to Show Cause would not have been entered had Taylor alerted the Court that the motion to dismiss had been resolved by agreement, and, therefore, the hours billed responding to the Court's Order to Show Cause were unnecessary. Defendants fail to cite to any authority in support of this proposition.  Taylor responds that Defendants' motion to dismiss was meritless; more specifically, contrary to the arguments raised in the motion to dismiss, venue was proper in this Court. *See* Doc. 11 at ¶ 2.  Moreover, Taylor contends that the motion to dismiss was effectively withdrawn by Westfield filing its Answer and/or it was Westfield that failed to advise the Court that the motion to dismiss was no longer at issue.  Defendants have failed to establish that the Court's Order to Show Cause was Taylor's fault or that Taylor's thoughtful, detailed response thereto was unnecessary or excessive.  As such, the Court overrules the objection.

> (6) Hours billed for preparing unfiled or unnecessary motions or
> responses

Defendants next argue that 25.25 hours spent preparing "unfiled or unnecessary" motions or responses should be deducted.  Taylor, however, adequately explains how each of the motions or responses listed by Defendants were necessary and filed with the exception of 8.5 hours accrued in July 2017 on a brief addressing whether the Court had supplemental jurisdiction over Slone's claims against Daniels.  The Court's supplemental jurisdiction over Slone's claims against Daniels is not relevant to the claims involving Taylor and for which

Taylor is the prevailing party. As such, $2,550.00 will be deducted for those 8.5 hours (comprised of 8.5 hours by Michael A. Sasso at $300/hour = $2,550.00).

(7) Hours billed for litigating the reasonable amount of attorneys' fees

Defendants argue that 14.05 hours billed by Taylor litigating the reasonable amount of attorneys' fees should be deducted. In what amounts to a concession by Taylor as to this argument, Taylor makes specific note in its Supplemental Motion for Fees and Costs (Doc. 176) that it excluded from the additional fees incurred in July 2019, the time spent litigating the reasonable amount of attorneys' fees. *See* Doc. 176 at 4 & n.2; Doc. 176-1, Ex. A. Moreover, Taylor cites to *State Farm Fire & Casualty Company v. Palma*, 629 So.2d 830, 833 (Fla. 1993), for the proposition that time litigating entitlement to, but not amount of, fees is compensable under applicable Florida law. Doc. 176 at 4. Taylor even includes a footnote explaining that although the limitation set forth in *Palma* "does not apply in all cases under Florida law, it is applicable here." Doc. 176 at 4, n.2. Inexplicably, Taylor's subsequent response to Defendants' objection to the inclusion of hours spent litigating the reasonable amount of its attorneys' fees is that Defendants' objection is unfounded. Doc. 188 at 8. Taylor goes on to explain that it was "complying with the obligation to produce evidence taxable" without any applicable supporting authority. Doc. 188 at 9. Accordingly, $4,790.00 for the 14.05 hours spent in July 2019 by Taylor on the amount of reasonable attorneys' fees, including preparing a resume for one of the attorneys who worked on this case, will be deducted (comprised of 5.2 hours by Tegeler at $450/hour, 6.8 hours by Michael A. Sasso at $300/hour, and, collectively, 2.05 hours by Bonta, Cochran, and McGavock at $200/hour = $4,790.00). *See Palma*, 629 So.2d at 833.

(8) Hours billed by attorneys that were clerical, duplicative and unnecessary, or vague

Defendants also assert that at least 14.75 hours billed by Taylor's attorneys should be deducted as clerical, duplicative and unnecessary, or vague. Defendants argue that Michael A. Sasso spent countless hours coordinating depositions and mediations and "working on" serving Bill Daniels with a deposition subpoena; other counsel performed unnecessary duplicative reviews of routine orders irrelevant to their assigned tasks and engaged in duplicative office conferences; and all six attorneys who billed time on the file entered vague and unspecific time entries. Doc. 181 at 15. Defendants, however, fail to adequately explain this contention or provide any authority in support thereof. Instead, Defendants deem it unnecessary to provide a detailed argument on each objectionable entry because the Court is itself an expert and may rely on its on knowledge, experience, and expertise. While the Court can rely on its own expertise as to the reasonableness of hourly rates and overall reasonableness of hours billed, it does not alleviate the burden of a party to support their premise for deduction of hours. The Court finds Defendants' objections to "clerical, duplicative and unnecessary, or vague" hours unsupported and overrules the objections.

In summary, the Court reduces Taylor's requested attorneys' fees of $285,346.75 by $57,282.50 to a total of $228,064.25.

2. Costs

In diversity actions, federal law applies to the issue of taxable costs. *See, e.g., Tang How v. Edward J. Gerrits, Inc.*, 756 F. Supp. 1540, 1545 (S.D. Fla. 1991). Rule 54(d) of the Federal Rules of Civil Procedure provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d). Rule 54(d), however, does not give the district court "unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the

15

conduct of his case." *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964), *disapproved on other grounds by Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442-43 (1987). The Supreme Court has held that district courts must limit costs awarded under Rule 54(d) to the list of items set forth in 28 U.S.C. § 1920 and other related statutes. *Crawford Fitting Co.*, 482 U.S. at 445; *see also EEOC v. W&O, Inc.,* 213 F.3d 600, 620 (11th Cir. 2000). Moreover, a court may decline to tax costs in § 1920 but may not tax costs not in § 1920. *Crawford*, 482 U.S. at 442–43. Taxable costs pursuant to 28 U.S.C. § 1920 include only:

> (1) Fees of the clerk and marshal;

> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

> (3) Fees and disbursements for printing and witnesses;

> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

> (5) Docket fees under section 1923 of this title;

> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Here, Taylor seeks costs in the amount of $25,167.92. *See* Doc. 176 at 6-8. Defendants object to a number of the items Taylor included as costs and asserts that Taylor is only entitled to $10,812.89 in costs. The Court notes that Taylor did not respond to any of Defendants' objections as to costs save their objection to the cost of procuring electronic documents from Walmart. As such, the Court considers Defendants' other objections to Taylor's costs unopposed. Similarly, the Court considers any of Taylor's costs not objected to by Defendants as unopposed.

Defendants first object to the amount Taylor included as the "cost of procuring electronic documents from a third party"; specifically, $5,177.52 "for records on the project obtained from the owner, Walmart." Doc. 161 at 14; Doc. 181 at 20. Defendants argue that, as the party that procured and possesses the documents, it is incumbent upon Taylor[5] to show that these documents were "necessarily obtained for use in the case," and Taylor has failed to do so. Taylor's response to this objection is that "this cost was not for copies—but to get evidence from the owner, Wal-Mart." Doc. 188 at 11. Taylor, however, fails to cite to any authority for this basis.

Although Taylor refutes the categorization of this cost as "copies" and, indeed, the Wal-Mart invoice provided (Doc. 176-1 at 20) describes the invoiced items instead as "Document collection," "Document processing and hosting," and "Document review," it appears that the only item in § 1920 that this cost could conceivably fall under is § 1920(4): fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case. As such, Defendants' objection is well-taken. "When a party fails to respond to the objections to a bill of costs by coming forward with evidence showing the nature of the documents copied and how they were used or intended for use in the case, the court may disallow costs." *Fulton Fed. Sav. & Loan v. Am. Ins. Co.,* 143 F.R.D. 292, 300 (N.D. Ga. 1991) (citation omitted); *accord Gary Brown & Assocs., Inc. v. Ashdon, Inc.,* 268 F. App'x 837, 846 (11th Cir. 2008).[6] Taylor has failed to provide an adequate basis, documentation, or explanation justifying this cost, and the Court is otherwise unable to

---

[5] Defendants' Response in Opposition contains a scrivener's error that reads: "it is incumbent on **Wal-Mart** to show that these documents were 'necessarily obtained for use in the case.'" *See* Doc. 181 at 20 (emphasis added). Clearly, Taylor, not Wal-Mart, carries this burden.

[6] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

determine for what purpose this cost was incurred. *See Gadsby v. Am. Golf Corp.*, No. 2:10-CV-680-FtM-38CM, 2014 WL 5473555, at *11 (M.D. Fla. Oct. 28, 2014) ("Failure to provide supporting documentation can be grounds for denying costs."). The Court will, therefore, exclude the $5,177.52 in unsupported costs.

Next, Defendants object to Taylor's expert witness fees asserting that federal courts may not tax a prevailing party's expert witness fees in excess of $40 where the witness is not appointed by the Court. Doc. 181 at 19 (citing *Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460, 463 (11th Cir. 1996)). Taylor even "acknowledges that existing case law in this district applying 28 U.S.C. § 1920 may prohibit or limit Taylor's recovery of expert witness fees." Doc. 176 at 7. Indeed, while witness fees are recoverable under 28 U.S.C. § 1920(3), federal courts must comply with 28 U.S.C. § 1821 when determining an award for witness costs. *Crawford Fitting Co.*, 482 U.S. 437; *see also Kivi v. Nationwide Mut. Ins. Co.*, 695 F.2d 1285, 1289 (11th Cir. 1983) (stating that it is "well settled" that expert witness fees are limited by the amount set forth under 28 U.S.C. § 1821). Under 28 U.S.C. § 1821, awards for witnesses are limited to $40 for each day a witness attends court, appears before a Magistrate Judge, or gives his or her deposition. 28 U.S.C. § 1821(a)(1).

Here, Taylor initially requested $6,555.05 in expert witness fees in its Motion for Fees and Costs (Doc. 161 at 15) consisting of $5,875.05 paid to its expert Lyle Charles Consulting, Inc. and $680.00 paid to Defendants' expert Nova Engineering. *See* Taylor's summary chart of costs at Doc. 161-3. Subsequently, in its Supplemental Motion for Fees and Costs, Taylor only references the $5,875.05 amount paid to Lyle Charles Consulting, Inc. and omits mention of the $680.00 amount paid to Nova Engineering. Doc. 176 at 7. However, Taylor's revised summary chart of costs attached to the Supplemental Motion still listed both amounts

as included in its $23,167.92 total.  Doc. 176-1.  Taylor also added a request for $2,000.00 for its attorneys' fee expert in the Supplement Motion itself but did not include the $2,000.00 amount in the revised summary chart.  *Cf.* Docs. 176 at 7 and 176-1 at 6 *with* Doc. 176-1 at 14.  The $23,167.92 revised summary chart total plus the $2,000.00 fee for its attorneys' fee expert equals the $25,167.92 Taylor seeks in its Supplemental Motion.  Doc. 176 at 7.

Defendants argue that Taylor's expert witness fees, with the exception of $40 for the deposition appearance of expert Lyle Charles, should be excluded.  This Court agrees.  The expert witness fees sought by Taylor here, with the exception of $40 for Lyle Charles' deposition appearance, do not involve court attendance, appearance before a Magistrate Judge, or a deposition and, therefore, are not recoverable.  As such, the amount sought by Taylor for taxable costs must be reduced by $8,515.05 (comprised of $5875.05 (Lyle Charles Consulting, Inc. expert fees) + $680.00 (Nova Engineering expert fees) + $2,000.00 (Shannin Law Firm expert fees) - $40.00 (witness fee for Lyle Charles) = $8,515.05).  *See, e.g., Kearney v. Auto-Owners Ins. Co.*, No. 8:06-cv-595-T-24TGW, 2010 WL 3062420, at *2 (M.D. Fla. Aug. 4, 2010) (denying expert witness costs demanded pursuant to Florida statutes).

Defendants also object to the taxation of $1,342.46 for mediator fees. Defendants assert, and Taylor does not contest, that § 1920 does not authorize the taxation of mediator fees.  Because mediation expenses are, in fact, not taxable costs under 28 U.S.C. § 1920, the Court sustains Defendants' objection as to the mediator fees.  *See Gary Brown*, 268 F. App'x at 846; *Ivory v. Holme*, 8:07–cv–2354–T–TBM, 2009 WL 1185309, at *2 (M.D. Fla. Apr. 30, 2009).  As such, the Court will exclude the $1,342.46 in mediator fees.

As previously noted, although Taylor withdrew its "postage" costs, Taylor still seeks costs that are described in its summary chart as mailing or courier costs, *i.e.*, "Thunderbird

Express; Courier to/from U.S. Federal Court, Tampa 10-19-16" ($216.40) and "FedEx; Express Mail to/from Irwin County Sheriff's Office 10-01-18" ($26.21). Courier/postage costs are not recoverable under § 1920. *See Gary Brown*, 268 F. App'x at 846. As such, the Court will exclude the courier and express mail costs totaling $242.61.

The Court finds the remaining costs requested by Taylor, and unobjected to by Defendants, awardable pursuant to 28 U.S.C. § 1920. As such, Taylor is awarded $9,890.28 in costs.

Taylor argues that, as non-prevailing parties, Defendants are jointly and severally liable for the attorneys' fees and costs assessed in this case. *See* Doc. 161 at 14, Doc. 176 at 8 (citing *Smith v. Joy Techs., Inc.*, No. 11-270-ART, 2015 WL 428115, at *7 (E.D. Ky. Feb. 2, 2015)). Regardless of how the Court qualifies the liability for the fees and costs, "a surety is liable only up to the face amount of the transfer bond." *See Bayview Constr. Corp. v. Jomar Props., LLC*, 97 So.3d 909, 912 (Fla. 4th DCA 2012) (citing *Aetna Cas. & Sur. Co. v. Buck*, 594 So.2d 280, 283 (Fla. 1992) (noting that "the lienor is left with an unsecured judgment against the owner for any costs which exceed the remaining face amount of the bond")). As such, Westfield is not liable for fees or costs that exceed the remaining face amount of the bond. The Court notes $195,000.00 of the $253,234.20 bond has been paid to Taylor, leaving a remaining penal sum of $58,234.20.[7] Doc. 181-1 at 2. However, this issue is obviated by the Court's ruling below that Taylor is entitled to an increase of the security provided by Slone.

Defendants also argue that Slone's liability is temporally limited to when Slone intervened on March 10, 2017. Taylor counters that Slone agreed to joint and several liability

---

[7] The parties agreed to $195,000.00 "in full and final satisfaction ... together with any and all claims for pre-judgment interest and post-judgment interest" of the $174,340.99 final judgment entered in Taylor's favor against Westfield. Doc. 181-1 at 2.

with Westfield in the bond. However, the language in the bond provides for joint and several liability in reference to the surety and principal being bound to Wal-Mart Stores, Inc. for the sum of the bond, *i.e.*, $253,234.20.

> BY THIS BOND, We, Slone Associates, Inc. as Principal and Westfield Insurance Company, as surety ... are bound to Wal-Mart Stores, Inc. ... in the sum of Two Hundred Fifty Three Thousand Two Hundred Thirty Four Dollars and 20/100.... We bind ourselves, our heirs, personal representatives, successors and assignees, jointly and severally.

Doc. 1-8 at 2. Taylor also argues that the litigation tasks are inseparable but fails to elaborate or cite to any supporting authority. As with the joint and several liability, this issue is obviated by the Court's ruling that Taylor's Motion to Require Additional Security is due to be granted, as discussed below.

### 3. Post-judgment Interest[8] on Costs and Fees

Taylor contends that it should be awarded interest on its attorneys' fees and costs and that the entitlement to such interest was triggered as of the date the Court entered summary judgment – July 12, 2019 (Doc. 158).[9] Defendants contest only the date upon which the interest begins to accrue and assert that entitlement was determined by Defendants' agreement on August 7, 2019 to Taylor's entitlement to attorneys' fees. *See* Doc. 167. Taylor does not further address or contest this assertion in its Reply (Doc. 188).

Unlike prejudgment interest, federal law controls entitlement to post-judgment interest. *See* 28 U.S.C. § 1961(a); *see also, e.g., Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 572

---

[8] Taylor uses the term "prejudgment interest" but is requesting interest from the date of the Court's entry of summary judgment in Taylor's favor. Accordingly, the Court will reference and consider the interest requested as "post-judgment interest."

[9] The Court notes that, inconsistently, in its Motion to Require Additional Security (Doc. 166), Taylor references post-judgment interest as accruing since July 15, 2019, the date of the Court's entry of judgment (Doc. 159). *See* Doc. 166 at 6 n.2.

n.4 (11th Cir. 1991) ("in awarding postjudgment interest in a diversity case, a district court will apply the federal interest statute"); *G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1542 (11th Cir. 1985) (holding that the federal interest statute governs the award of post-judgment interest instead of the Florida interest statute).  When a fee award to the prevailing party is pursuant to an unconditional statutory right, as is the case here,[10] the interest runs from the date of final judgment on the merits.  *See Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 803-04 (11th Cir. 2012) (citing *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1053 (11th Cir. 1994); *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 495 (6th Cir. 2001); *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391–92 (9th Cir. 1995); *Jenkins by Agyei v. Missouri*, 931 F.2d 1273, 1275–77 (8th Cir. 1991); *Mathis v. Spears*, 857 F.2d 749, 760 (Fed. Cir. 1988); *Copper Liquor, Inc. v. Adolph Coors Co.,* 701 F.2d 542, 544–45 (5th Cir. 1983), *overruled on other grounds by Int'l Woodworkers of Am., v. Champion Int'l Corp.*, 790 F.2d 1174, 1175–76 (5th Cir. 1986)).  Similarly, when a district court taxes costs against a losing party, the award of costs bears interest from date of original judgment.  *BankAtlantic*, 12 F.3d at 1052; *Georgia Ass'n of Retarded Citizens v. McDaniel*, 855 F.2d 794, 799 (11th Cir. 1988).  Accordingly, Taylor is entitled to post-judgment interest at the legal rate prescribed in 28 U.S.C. § 1961 from the date of the judgments, *i.e.*, July 15, 2019 (Docs. 159 & 160).

## B.  Taylor's Motion to Require Additional Security

Taylor moves, pursuant to Florida Statute § 713.24, for entry of an order requiring Defendants to post additional security for Taylor's judgment, attorneys' fees, costs, and interest.  The parties agree that, under Florida law, there is a right to petition for the posting

---

[10] Florida Statute § 713.29 mandates the prevailing party's recovery of attorneys' fees in any action to enforce a claim against a bond.

of additional security.  Fla. Stat. § 713.24(3).  The parties, however, disagree as to whether this right extends to post-judgment requests as is the case here.  The Court is not surprised by the parties' disagreement as the question is not easily answered by reference to the statute or the case law interpreting it.  One Florida appellate court aptly noted:

> There can be no more confusing statute in Florida than the one on liens under Chapter 713. The frequent impracticality of its application in the field, coupled with ill conceived, confusing, patchwork amendments, all topped off by conflicting appellate decisions, have all combined to make life miserable for judges, lawyers, legislators and the vitally affected construction and lending industries.

*Am. Fire & Cas. Co. v. Davis Water & Waste Indust., Inc.*, 358 So.2d 225, 225 (Fla. 4th DCA 1978), *superseded by statute on other grounds as stated in Cool Guys, LLC v. Jomar Props., LLC*, 84 So.3d 1076 (Fla. 4th DCA 2012).

The Court's analysis begins with a review of the statute.  The statutory bond provides for the principal of the lien, interest, and attorney's fees and costs that may be taxed in the enforcement of the lien:

> (1) Any lien claimed under this part may be transferred, by any person having an interest in the real property upon which the lien is imposed or the contract under which the lien is claimed, from such real property to other security by either:
> …
> (b)  Filing in the clerk's office a bond executed as surety by a surety insurer licensed to do business in this state, either to be in an amount equal to the amount demanded in such claim of lien, plus interest thereon at the legal rate for 3 years, plus $1,000 or 25 percent of the amount demanded in the claim of lien, whichever is greater, to apply on any attorney's fees and court costs that may be taxed in any proceeding to enforce said lien.

Fla. Stat. § 713.24.

This bond amount may be increased as recognized in § 713.24(1): "In the absence of allegations of privity between the lienor and the owner, and subject to any order of the court increasing the amount required for the lien transfer deposit or bond, no other judgment or

decree to pay money may be entered by the court against the owner." Fla. Stat. § 713.24(1).

Section 713.24(3) provides direct instruction regarding a bond increase as follows:

> (3) Any party having an interest in such security or the property from which the lien was transferred may *at any time*, and any number of times, file a complaint in chancery in the circuit court of the county where such security is deposited, or file a motion *in a pending action* to enforce a lien, for an order to require additional security, reduction of security, change or substitution of sureties, payment of discharge thereof, or any other matter affecting said security. If the court finds that the amount of the deposit or bond in excess of the amount claimed in the claim of lien is insufficient to pay the lienor's attorney's fees and court costs incurred in the action to enforce the lien, the court must increase the amount of the cash deposit or lien transfer bond.

Fla. Stat. § 713.24(3) (emphasis added).   The purpose of the bond increase provision of the mechanics' lien statute is to preserve the lienor's right to adequate security for amounts due him or her under the mechanic's lien law. *Coppenbarger Homes, Inc. v. Williamson*, 611 So.2d 33, 34 (Fla. 1st DCA 1992).   In the 1998 amendment to the statute, the relief was made compulsory upon an adequate showing that the bond was insufficient.

Despite the long history of this statute, however, there is no authority as to whether post-judgment motions to increase security to cover incurred attorneys' fees are contemplated by the statute.  The two cases cited by Taylor are inapposite.  In *Lake Eola Builders, LLC v. The Metropolitan at Lake Eola, LLC*, the plaintiff's motion for bond increase was denied because the plaintiff had not established that the transfer bond was insufficient to pay the attorney's fees and costs.  *Lake Eola*, No. 6:05-cv-346-Orl-31DAB, 2006 WL 2194389, at *1 (M.D. Fla. Aug. 2, 2006) (noting relief is compulsory upon an adequate showing that the bond is insufficient for attorney's fees and costs incurred and denying the motion for failure to establish amounts were actually incurred and were sufficiently related to the lien claim as opposed to other claims involved in the litigation).  While the Court noted in dicta that "[i]n view of the upcoming trial…, entitlement to any award will soon be determined, and a detailed analysis

24

of whether fees are properly recoverable under Fla. Stat. § 713.29 can be made upon a more complete record," this does not equate to the Court's contemplation or endorsement of a post-judgment motion to increase security. *Id.* at *2. Taylor's conclusion by extrapolation that any potential future motions for increase of security would necessarily be post-judgment or that the Court was specifically endorsing a statutory basis, without benefit of argument or briefing, for such a post-judgment motion is completely unfounded. The *Lake Eola* Court did not have the issue of a post-judgment motion for an increase in security before it. In fact, a review of the docket in *Lake Eola* reveals that the case settled prior to trial, and the case never involved subsequent motions for increase of security, let alone a post-judgment motion. *See Lake Eola*, No. 6:05-cv-346-Orl-31DAB.

Similarly, the case of *Royal Marble, Inc. v. Innovative Flooring & Stonecrafters of SWF, Inc.* does not involve a post-judgment motion for an increase of security. *Royal Marble*, 932 So.2d 221, 222-23 (Fla. 2d DCA 2005). Instead, the Florida Second District Court of Appeal dismissed the petition in *Royal Marble* for lack of jurisdiction. In determining lack of jurisdiction, the court set forth the underlying findings of the trial court for its denial without prejudice of petitioner's motion to increase security pursuant to Florida Statute § 713.24(3). In relevant part, the trial court found that petitioner had failed to present sufficient evidence to establish that its claimed attorney's fees were reasonable and had failed to present evidence that "the amount of the case deposit in excess of the amount claimed in the claim of lien is insufficient to pay its attorney's fees and costs incurred in the action to enforce the lien." *Id.* at 222. The Second District, in finding that the harm alleged by petitioner was not irreparable and, therefore, did not warrant a common law writ of certiorari, explained that petitioner "may continue to file motions seeking to increase the bond as it incurs fees that exceed the

amount of the security bond that is set aside for fees and court costs." *Id.* at 222-23.  Again, the leap suggested by Taylor that, therefore, any potential future motions for increase of security would necessarily be post-judgment or that the Second District was specifically endorsing a statutory basis, without benefit of argument or briefing, for a post-judgment motion for an increase in security is too contrived.

Although not specifically on-point either, the Court finds *Brickell Bay Club, Inc. v. Ussery* more instructive.  *Brickell*, 417 So.2d 692 (Fla. 3d DCA 1982).  In *Brickell*, the trial court in the underlying action entered a final judgment of foreclosure of mechanic's lien and reserved the right to fix attorney's fees and costs at a later hearing.  The owner appealed the final judgment of foreclosure.  Subsequently, the trial court, upon various motions, awarded attorney's fees, interest, and costs and refused to increase the amount of the security bond. This ruling was also appealed.  The appellate court affirmed the entry of the final judgment of foreclosure of the mechanic's lien, sustained the award of attorney's fees, and reversed the order refusing to increase the bond with directions to the trial court to further consider the motion and to enter an appropriate order thereon.  *Id.* at 695.  In discussing the trial court's denial of the motion to increase the amount of security bond, the appellate court noted that the surety company, at the time it entered into the undertaking of transferring the lien to bond, was on notice that the amount of the bond could be increased. *Id.* at 694.  The court further noted that "all amounts due were liquidated at the time the trial judge entered the order denying the motion to increase the bond" and that the bond should have been increased to cover the total amount awarded.  *Id.* at 694-95.  *Brickell* decidedly involved a post-judgment motion for an increase of the bond, the timing of which the appellate court implicitly approved by reversing the trial court's denial of that motion.  That said, *Brickell* does not specifically

address the issue of a statutory basis for a post-judgment motion for an increase in security.

The case law being irresolute on this issue, the Court turns to the language of the statute itself. Mechanics' lien law must be strictly construed. *Smith Original Homes, Inc. v. Carpet King Carpets, Inc.*, 896 So.2d 844, 846 (Fla. 2d DCA 2005) (citing *Buck*, 594 So.2d at 281). "In construing a statutory provision, the Court first looks to the actual language used in the statute." *Polite v. State of Fla.*, 973 So.2d 1107, 1111 (Fla. 2007) (citing *State v. Bodden*, 877 So.2d 680, 685 (Fla. 2004)). "'[W]hen the words of a statute are plain and unambiguous and convey a definite meaning, courts have no occasion to resort to rules of construction—they must read the statute as written' and the court's inquiry should end." *Rothman–Browning v. Marshall*, 83 So.3d 859 (Fla. 4th DCA 2011) (quoting *Nicoll v. Baker*, 668 So.2d 989, 990–91 (Fla.1996)). Here, the statute states, in pertinent part, that any party with an interest in the security may "at any time" file a motion "in a pending action to enforce a lien, for an order to require additional security, reduction of security, change or substitution of sureties, payment of discharge thereof, or any other matter affecting said security." Fla. Stat. § 713.24(3). Clearly, the ability to file a motion "at any time" in a pending action hinges on what constitutes a pending action. The statute itself does not otherwise define "pending action." Although not rendered in mechanic's lien law cases, Florida courts have held that an action becomes a pending suit when it is commenced and continues pending until after final judgment and such time as an appeal is taken or the time for an appeal expires. *See Smith v. Dawson*, 880 So.2d 784, 785 (Fla. 2d DCA 2004); *Suarez v. Hillcrest Dev. of S. Fla., Inc.*, 742 So.2d 423, 425 (Fla. 3d DCA 1999) (citing *Bridges v. Bridges*, 520 So.2d 318 (Fla. 2d DCA 1988)); *Wilson v. Clark*, 414 So.2d 526, 530 (Fla. 1st DCA 1982) ("The general rule is that an action remains pending in the trial court until after a final judgment and such time as an

appeal is taken or time for an appeal expires.  If an appeal is taken, the action is still pending until final disposition.") (citing *Southern Title Research Co. v. King*, 186 So.2d 539, 544-45 (Fla. 4th DCA 1966)).  Taylor's Motion to Require Additional Security was filed only 15 days after the final judgment was entered and before the window for an appeal had closed.  *See* F.R.A.P. 4 (notice of appeal must be filed with the district clerk within 30 days after entry of the judgment).  Therefore, this case was still a "pending action" when Taylor's Motion to Require Additional Security was filed.

This finding comports with the purpose behind the statute.  "The lienor originally had a lien against a substantial asset…. The owner elected to transfer the lien to bond, the lienor was entitled to a bond sufficient to guaranty his payment the same as he would have been if the lien had not been transferred but remained an encumbrance against the real estate."[11] *Brickell*, 417 So.2d at 695.  Moreover, "the fundamental purpose of the Construction Lien Law is to protect those who have provided labor and materials for the improvement of real property.  It is to be construed favorably so as to give laborers and suppliers the greatest protection compatible with justice and equity."  *WMS Constr., Inc. v. Palm Springs Mile Assocs., Ltd.*, 762 So.2d 973, 974-75 (Fla. 3d DCA 2000) (citations omitted).

However, the posting of additional security cannot be imposed upon the surety itself.  "[A] surety is liable only up to the face amount of the transfer bond."  *Bayview Constr.*, 97 So.3d at 912 (citing *Buck*, 594 So.2d at 283 (noting that "the lienor is left with an unsecured judgment against the owner for any costs which exceed the remaining face amount of the bond")); *Ohio Cas. Ins. Co. v. Oakhurst Homes, Inc.*, 512 So.2d 1156, 1157 (Fla. 2d DCA 1987)

---

[11] Taylor asserts that, as of July 30, 2019, according to the Hernando County Property Appraiser, the assessed value of the real property against which Taylor recorded its lien was $45,565,981.00.  *See* Doc. 166 at 2; Doc. 166-1.

("The trial court cannot … increase the liability of the security company beyond the amount of the bond.").  Upon motion of the lienholder to increase security pursuant to § 713.24(3), a trial court can order the party providing the bond to purchase either an additional bond or an increase in the existing bond, or to otherwise provide increased security for the loan.  *Oakhurst Homes*, 512 So.2d at 1157.  Moreover, because the principal of the bond is a party to this suit, the Court has jurisdiction to require the principal to post additional security.  *See Pappalardo v. Gordon F. Buck, P.E.*, 659 So.2d 422, 423 (Fla. 4th DCA 1995).  As such, Taylor's Motion to Require Additional Security (Doc. 166) is granted as to the principal on the bond, Slone, to the extent set forth below.

Accordingly, for the reasons set forth herein, it is hereby **ORDERED**:

1) Taylor's Motion for Fees and Costs Against Westfield and Slone (Doc. 161) and Supplemental Motion for Fees and Costs Against Westfield and Slone (Doc. 176) are **GRANTED IN PART** and **DENIED IN PART**:

   a. Taylor is awarded $228,064.25 in attorneys' fees plus post-judgment interest at the legal rate prescribed in 28 U.S.C. § 1961 from the date of judgment, July 15, 2019.

   b. Taylor is awarded $9,890.28 in costs plus post-judgment interest at the legal rate prescribed in 28 U.S.C. § 1961 from the date of judgment, July 15, 2019.

2) Taylor's Motion to Require Additional Security (Doc. 166) is **GRANTED IN PART**.  Slone is directed to increase the amount of the existing security bond by

an additional $179,720.33[12] within 30 days of the date of this Order.

**ORDERED** in Tampa, Florida, this 15th day of April 2020.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

---

[12] $228,064.25 awarded in attorneys' fees + $9,890.28 awarded in costs - $58,234.20 remaining penal sum on current bond = $179,720.33.